THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL CHMILENKO, Defendant-Appellant.

(No. 58092;

·First District (5th Division)—August 10, 1973.

Jonathan M. Hyman, of Northwestern Legal Assistance Clinic, of Chicago, (William Wilen, Senior Law Student, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Sharon Grossman, Kenneth L. Gillis, and James Carlson, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:
*OFFENSE CHARGED*
Escape. Ill. Rev. Stat. 1969, ch. 38, par. 31—6(c).
*JUDGMENT*
After a bench trial, defendant was found guilty and was admitted to one year's probation.

## CONTENTIONS RAISED ON APPEAL

1. The State failed to prove beyond a reasonable doubt that defendant intended to escape from custody.

2. The trial court erred in refusing to allow testimony about defendant's epileptic seizures.

## EVIDENCE

*Thomas Kelly,* for the State:

On May 30, 1971, he was a Chicago police officer in charge of picking up prisoners at different police stations and taking them to court. He handcuffed defendant to four other prisoners in a line and put them in the police van. He had 32 prisoners total, defendant and 29 [sic] others. They proceeded to the garage area of the 19th District station. The witness saw that defendant was handcuffed to the others at the outside end of the line. The handcuffs were locked. After the prisoners were brought to the door of the lock-up and while they were waiting for the door to be opened, he noticed he was short one fellow. Defendant's handcuff was hanging from another prisoner's wrist. Somehow and in some way, defendant had departed the premises through the squad wagon. He notified the captain that defendant was missing. He did not know exactly when defendant escaped, but he knew about it a minute or two later. Other police officers ran around the building looking for defendant. It was approximately 6:00 A.M. Sunday.

*Mary Chmilenko,* for defendant:

She was defendant's wife. On Sunday, May 30, 1971, at about 1:30 A.M., she saw her husband on the Weiss Memorial Hospital floor surrounded by policemen. She told the police that her husband was sick and needed medicine if he was going to be taken in. She was told to go home to get the medicine. The medicine was for epilepsy. When she returned with the medicine, her husband was gone. Defendant did not receive the medicine.

*Michael Chmilenko,* on his own behalf:

He had been an epileptic since 1969. He took medicine for his condition three times a day. He was taken from the hospital to the police station and held in custody until the morning without receiving any medicine. He was taken from the lock-up by Officer Kelly. The handcuffs were on, but not locked. He was taken from the police van to the garage. The three guards went to have coffee, leaving the prisoners alone. He next remembered waking up on the other side of the street in a gangway. A man woke him up. The man had put a comb in defendant's mouth. He asked the man to call a cab and he went to his mother's house. His mother paid for the cab. He could not really tell how far he was from

the police station when he awoke. He washed up and was going to call the police when they knocked on his door. He had had other seizures where he couldn't remember what had happened. He had a seizure the evening of his arrest and another at the police station while in custody. He tried to tell Officer Kelly the handcuff wasn't fastened. He was still drowsy after the seizure, but remembered his mother's address. At the time of his arrest, he had a seizure and was not given the chance to make a phone call. He went home to get his father to get him out on bond. He could not see the police station after he woke up in the gangway.

Dr. Frederick Gibbs testified, by way of stipulation, that defendant suffers from epilepsy "which consists of periods when the subject continues to function physically and can walk and talk, but during which the subject lacks conscious awareness of what he is doing, lacks conscious intent to do what he does, and lacks any recollection of what he did during the seizure. Such psycho-motor seizures may last up to several minutes.

*OPINION*

Defendant contends that the State failed to prove beyond a reasonable doubt that defendant intended to escape. He asserts that his unrebutted testimony of suffering an epileptic seizure at the time of his escape negates any inference of intent which may be drawn from the circumstances, thereby leaving a reasonable doubt as to his guilt.

■■ Escape (Ill. Rev. Stat. 1971, ch. 38, par. 31—6(c)), as charged in the indictment, is committed when: "A person in the lawful custody of a police officer [who] intentionally escapes from custody * * *." A person has the requisite intent to escape, as defined by the statute (Ill. Rev. Stat. 1971, ch. 38, par. 4—4), "when his conscious objective or purpose is to accomplish that result * * *."

■■ Although the mere existence of epilepsy in a person does not necessarily affect his competency to stand trial (*People v. Thompson*, 3 Ill. App.3d 684, 278 N.E.2d 1) nor justify a presumption of permanent incapacity (*People v. Martin*, 69 Ill.App.2d 12, 216 N.E.2d 170), unrebutted evidence that a defendant suffered, at the time of the offense, a seizure "during which the subject lacks conscious awareness of what he is doing, lacks conscious intent to do what he does," tends to raise doubt as to his ability to form the specific intent to escape as required by the statute. Dr. Gibbs' stipulated testimony that defendant's epilepsy could have created in defendant a seizure during which he would not be conscious but could remain ambulatory, coupled with defendant's uncontradicted testimony that he suffered from such a seizure at the time of his escape, raised, in our opinion, a reasonable doubt that defendant possessed the

necessary "conscious objective" to escape. See *People v. Dolatowski*, 94 Ill.App.2d 434, 237 N.E.2d 553.

The State has offered no evidence to contradict defendant's testimony. In fact, it appears that none of the police officers charged with guarding the prisoners saw defendant's condition at the time, nor was aware of the escape until some minutes later. The record does not indicate that defendant was given any medication for his epilepsy during the time he was in custody, thereby adding credibility to his testimony. Defendant testified that he was suffering a seizure at the time of arrest and again at the time of escape. During the time of the second seizure, defendant could have pulled out of the handcuffs, walked across the street in a partially dazed condition at 6:00 o'clock on a Sunday morning, and have regained consciousness a short time later. He testified further that, finding himself no longer in custody and still dazed, he went home to seek help from his father.

■■ We recognize that the credibility of witnesses is a matter for the trial court, but there is nothing in the record which disproves the fact of defendant's seizure, or which indicates that defendant had formed the intent to escape before he suffered the seizure, even though from his testimony it appears that when he learned the handcuffs were unlocked, he could have done so. Instead, the record indicates that he tried to get the attention of his guard but was ignored. Again the State has failed to contradict his testimony except for the guard's assertion that the handcuffs were locked.

■■ We conclude that the State failed to prove the necessary mental state of defendant at the time of the crime alleged, and, in consequence, failed to prove defendant guilty of escape beyond a reasonable doubt. His conviction is therefore reversed.

Reversed.

DRUCKER, P. J., and LORENZ, J., concur.