THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JESSIE GILLIAM, Defendant-Appellant.

(No. 72-156; ▮▮▮▮▮▮▮▮▮▮▮)

Third District—January 22, 1974.

*Rehearing denied February 13, 1974.*

James Geis, Deputy Defender, of Ottawa, for appellant.

William McMenamin, Assistant State's Attorney, of Joliet, for the People.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

The grand jury of Will County indicted the defendant Jessie Gilliam for the crimes of murder, attempt murder and aggravated kidnapping. All of these charges were based upon the theory of accountability pursuant to the provisions of chapter 38, section 5—2(c), Ill. Rev. Stat. After trial by jury and being found guilty of the crime of aggravated kidnapping he was sentenced to a term of not less than two nor more than six years in the penitentiary.

The evidence setting forth the factual situation which resulted in the defendant's conviction is in some instances conflicting; however, the record discloses that on March 28, 1971, the defendant along with four codefendants traveled to East Chicago, Indiana, for the purpose of meeting two individuals, Lowrey Glen Butler and Wilbur Grissell, upon whom revenge was to be had for an alleged rape of the codefendant Fannie Bradley. The evidence is in conflict as to whether or not the defendant had knowledge of the purpose of the trip.

After arriving in East Chicago, Indiana, the defendant and three male codefendants waited in a garage for a period of one and a half to two hours. During this time the codefendant Fannie Bradley remained in the car. Ultimately the victims Butler and Grissell met Fannie Bradley and

the three of them started up the back stairs to an apartment. At this time they were apprehended by either the codefendants Hunt, McAdoo and Teamer or by this threesome along with the defendant. Again the evidence is in conflict and this time as to whether or not the defendant participated in the initial apprehension of Butler and Grissell. In any event the victims were ordered to halt, searched and then at gun point forced to enter the truck of the car used by the defendants. McAdoo, Hunt, Fannie Bradley, the defendant, and Teamer (the latter was later to testify for the State) got into the car and drove to Will County, Illinois, where they stopped in a field. The four men, all codefendants, namely McAdoo, Hunt, Teamer and the defendant, stood near the trunk of the car as its door was opened and the victims Butler and Grissell were ordered to walk out into the field. The victims were then ordered to remove everything from their pockets and then to lie down in the field. There seems to be no conflict concerning the fact that it was McAdoo who shot both Butler and Grissell. The latter died, however, Butler survived and testified at the defendant's trial. He testified that prior to the shooting the defendant was standing in the field holding a shot gun but that he was wounded by being shot by McAdoo and that he then heard someone say "Shoot him, shoot him" and a second shot was fired. Butler further testified that he raised up and heard someone say "He ain't dead, shoot him again". It is apparent from the record that the codefendants Hunt and Teamer were walking back to the car when the shots were fired.

The defendant Jessie Gilliam's testimony was that he knew the codefendants because of his friendship with Fannie Bradley's daughter, but had not seen any of them for approximately three months prior to the crime. He testified that pursuant to Fannie Bradley's request he left a shotgun at her house on the day preceding the crime. That on the next day he received a call from Fannie Bradley's daughter asking him to come to her house and that he complied with this request. It is the defendant's contention that he began drinking wine and beer and became intoxicated and spent most of the night in question sleeping in the back seat of the automobile. That the defendant was so drunk he was staggering is corroborated by the testimony of Hunt, Bradley, and the defendant's testimony.

A further recital of facts concerning the crime in question will be made when they become requisite to the determination of the issues raised in this appeal.

The first issue presented by the defendant is that the evidence adduced at the trial is not adequate to prove that he was accountable for the crime of aggravated kidnapping.

■■ Since the defendant was convicted for the crime of aggravated kidnapping on the theory of accountability, in order to sustain such a conviction it must be established that (1) the defendant solicited, ordered, abetted, agreed or attempted to aid others in the planning or commission of the offense; (2) that his participation took place before or during the commission of the offense, and (3) that his participation was with the concurrent, specific intent to promote or facilitate the offense. See *People v. Ramirez*, 93 Ill.App.2d 404, 236 N.E.2d 284.

■■■ It is the defendant's contention that in the record there is not a scintilla of evidence which indicates that he had knowledge of a scheme to commit the crime of kidnapping or that he performed a single act to assist the codefendants in such an endeavor. With this broad assertion we cannot agree. We must look at the circumstances surrounding the commission of the crime in their entirety in order to determine whether or not the defendant's conviction on the theory of accountability should be sustained. When we do so, we find that the defendant furnished one of the weapons involved; that he was present when the two victims were placed in the trunk of the car; that he was also present when the victims got out of the car trunk and that he accompanied the victims as they were taken further out into a field where they were shot. While we recognize that there is an abundance of conflicting testimony in the record, it is clear that the defendant and the codefendant McAdoo were left alone with the victims and that one or the other of them made the statement, "He aint dead, shoot him again." The defendant was either the maker or the recipient of this statement and in either event it indicates his participation in the scheme to kidnap and kill the victims, Butler and Grissell. While mere presence or negative acquiescence is not sufficient to constitute a person a principal to a crime, one may aid and abet without actively participating in the overt act, and if the proof shows he was present at the crime without disapproving or opposing it, trier of fact may competently consider this conduct in connection with other circumstances and thereby conclude that such person assented to commission of criminal act, lent his countenance and approval and was thereby aiding and abetting crime. (*People v. Richardson*, 32 Ill.2d 472, 207 N.E.2d 478.) See also *People v. Smith*, 1 Ill.App.3d 518, 275 N.E.2d 268, where it was held that association of defendant with group armed with deadly weapon is competent evidence of participation in crime and of guilt; also *People v. Nugara*, 39 Ill.2d 482, 236 N.E.2d 693, wherein it was held by the reviewing court that defendant's presence at the scene of a crime without disapproving or opposing it may be considered by the trier of facts along with other circumstances in determining whether or not he lent his

countenance and approval and thereby aided and abetted in the crime's commission.

■■ In the instant case the jury could competently consider the defendant's actions in supplying a shotgun, his traveling with the codefendants to a location where the victims were abducted, his presence when they were taken from the trunk of a car and his immediate presence when the victims were shot. All of this evidence was before the jury and we can only conclude that their verdict that the defendant was accountable for and guilty of the crime of aggravated kidnapping should be sustained. We are aware of the cases relied upon by the defendant, to-wit, *People v. Ramirez*, 93 Ill.App.2d 404, 236 N.E.2d 284, and *People v. Tillman*, 130 Ill.App.2d 743, 265 N.E.2d 904; however, in these cases it was not established that the defendants were present at the time or place of the offenses and in fact they had previously indicated their intention not to become involved in the criminal acts of their companions. The cases of *Ramirez* and *Tillman* are clearly distinguishable from the instant case.

■■ The defendant's brief does not specifically contend that the defendant was not accountable for the crime of aggravated kidnapping because of intoxication, yet it nevertheless stresses strongly that throughout the night in question the defendant was drunk and periodically fell asleep throughout the series of events. For voluntary intoxication to be a legal excuse and render specific intent impossible it must be such a condition of intoxication as to suspend all reason. (See *People v. Rose*, 124 Ill.App. 2d 487, 259 N.E.2d 393; *People v. Hansen*, 32 Ill.App.2d 448, 178 N.E.2d 206.) The evidence in this case falls short of this requirement.

■■ The last issue presented by the defendant is that the trial court committed error when it sustained an objection by the State to testimony which the defense attempted to introduce from a psychologist as to the defendant's limited mental ability. It should be noted that the defense did not offer testimony of a psychiatrist as to his opinion whether the defendant had sufficient mental ability to be criminally responsible but instead offered only the testimony of a psychologist as to the mental ability of the defendant. An offer of proof by the defense disclosed that the psychologist would testify that the defendant had an I.Q. of 65, that he had difficulty in understanding the motives of others and perceiving the consequences of behavior. The trial court held such testimony to be not relevant and we agree. In *People v. Jenko*, 410 Ill. 478, 102 N.E.2d 783, our supreme court stated that criminal responsibility depends on whether the accused knows the difference between right or wrong, can understand his relationship with others, and has knowledge of the nature of his act, so as to perceive its consequence to himself and others. As we

interpret the cases it is apparent that only a qualified psychiatrist, not a psychologist, could give an opinion as to the sanity of a defendant. (See *People v. Noble*, 42 Ill.2d 425, 248 N.E.2d 96.) In the instant case the testimony of the psychologist as to what tests were performed, and the results thereof, was irrelevant unless it formed the basis for an opinion by a qualified psychiatrist of the mental ability of the defendant. Since it did not form such a basis the testimony was properly excluded. Without an expert opinion the jury could only speculate on the mental ability of the defendant.

For the reasons set forth the judgment of the circuit court of Will County and the sentence imposed thereon is affirmed.

Affirmed.

ALLOY and DIXON, JJ., concur.