THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALBERT FELTON, Defendant-Appellant.

(No. 74-17; )

Third District—March 31, 1975.

James Geis and Richard Steck, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward P. Drolet, State's Attorney, of Kankakee (Michael Weinstein and F. Stewart Merdian, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Albert Felton appeals from a judgment of the Circuit Court of Kankakee County finding him guilty of burglary. He was sentenced to a term of not less than 1 nor more than 3 years with credit for 158 days served prior to judgment. Defendant contends (1) that the State failed to prove defendant was sane beyond a reasonable doubt at the time of the commission of the crime, and (2) that the court committed prejudicial error in not permitting a qualified psychologist to give his opinion as to defendant's sanity at the time of the crime.

From the record it appears that 4 days prior to the commission of the burglary, plaintiff was admitted to the State hospital at Manteno for the apparent purpose of treating his epileptic and alcoholic conditions. He was released from the hospital on June 21, 1973, the day prior to the burglary. At 7 A.M. on the following morning, an employee of Christiansen Auto Parts in Kankakee thought she heard footsteps coming from the rear of the building. She notified her supervisor and police arrived. The police proceeded to the rear rooms of the building and discovered defendant in the process of removing certain merchandise. Both inves-

tigating officers later testified at the trial that defendant appeared to be dazed.

Defendant thereafter gave a statement to the police which was later admitted into evidence. The statement related to defendant's recollection of the events of that and the previous day. The testimony of the officers was that after defendant had been released from the hospital he spent the evening at the Salvation Army, and on the day of the burglary, he wandered about town while awaiting the departure of a bus. He remembered noticing a store that sold stuffed animals, but he had no memory of events thereafter including the burglary at the auto parts establishment. The trial judge first determined that defendant was competent to stand trial, and trial before a jury was held. The defense asserted was insanity.

Three witnesses were called by the defense; the defendant, a psychiatrist and a psychologist. Defendant testified that he had no recollection of the day in question and stated that prior to his awareness that he was in jail, the last thing he remembered was resting in a hospital. Essentially, he stated that he did not remember any of the matters to which the police statement referred, and had no recollection of giving a statement to the police. The psychiatrist, Dr. Gojkovich, stated that he felt defendant's amnesia was genuine and not unusual for a person suffering a post-epileptic episode. He concluded with reasonable medical certainty that defendant was suffering from a mental defect or a disease at the time of the burglary. The doctor testified that most probably the defect suffered was a post-convulsive episode, the result of an epileptic seizure. The psychiatrist's direct testimony concluded with the opinion that defendant was legally insane at the time of the offense; that is, as a result of the mental disease, defendant lacked substantial capacity to conform his conduct to the requirements of the law and to appreciate the criminality of his action. See Ill. Rev. Stat. 1973, ch. 38, par. 6—2.

On cross-examination, Dr. Gojkovich stated that the only explanation for the behavior of the accused was either that defendant did suffer from a post-convulsive episode or that he was lying. He felt that the more probable explanation was that defendant suffered from a mental defect. All other medical explanations were refuted.

The final defense witness called was a psychologist who was appointed by the court to examine defendant for the purpose of the pretrial competency hearing. Following a preliminary examination in which the psychologist, who had a great deal of experience at the Kankakee State Hospital but was in private practice at the time of the trial, testified that defendant was suffering from a mental defect or disorder at the time of the burglary. Upon objection, however, he was not permitted to testify as to whether defendant was sane or insane at the time of the com-

mission of the crime. The trial court in sustaining the State's objection, which prevented the psychologist from testifying as to the ultimate issue as to whether or not defendant was sane or insane, stated that such conclusive opinion should be reserved for a medically-trained psychiatrist and not a psychologist.

The State offered, in rebuttal, the testimony of Detective George who referred to the statement given by defendant, in which defendant had recalled certain events of that day and the prior day. The evidence was offered to impeach the credibility of defendant, who had testified that he did not remember any of the events of June 22. The ostensible purpose was to show that defendant had lied to the psychiatrist.

■■ Insanity is an affirmative defense. (Ill. Rev. Stat. 1973, ch. 38, par. 6—4.) Once the defense introduces evidence of insanity, the presumption of sanity no longer prevails and the State must prove, beyond a reasonable doubt, that at the time of the commission of the crime the accused was legally sane. (*People v. Hawkins* (1972), 53 Ill.2d 181, 290 N.E.2d 231.) To rebut the presumption of sanity and to place the burden of proving otherwise on the State, evidence must be presented which tends to prove insanity sufficient in character to create a reasonable doubt of sanity at the time of the offense. *People v. Skeoch* (1951), 408 Ill. 276, 96 N.E.2d 473.

Defendant contends that having raised the issue of insanity under the *Skeoch* standard, the State failed to sustain the burden of proving that he was sane beyond a reasonable doubt, and that, therefore, defendant is entitled to a reversal as a matter of law.

■■ The mere existence of an epileptic condition in a person does not raise a presumption of insanity or any permanent disability. Unrebutted evidence that defendant suffered a seizure tends to raise a reasonable doubt as to his ability to form the mental state necessary to sustain a conviction, if defendant was having a seizure at the time of the crime. (*People v. Chmilenko* (1973), 14 Ill.App.3d 270, 272, 302 N.E.2d 455.) The same would be true of a post-convulsive episode existing at the time of the crime. On the basis of the record before us, therefore, we believe the defendant has properly and sufficiently raised the issue of insanity.

■■ The State, however, asserts that it has presented sufficient evidence on the issue of sanity at the time of the offense to create an issue of fact for the jury which should not be disturbed on appeal. In the words of the Illinois Supreme Court in *People v. Ford* (1968), 39 Ill.2d 318, 321, 235 N.E.2d 576:

> "* * * the question of insanity is one for the jury to decide [citation], and we will not disturb the jury's finding unless it is

so manifestly against the weight of the evidence as to indicate the verdict was based on passion or prejudice."

In determining how the State must sustain its burden, it has been stated that the State was not required to offer additional evidence or expert testimony to prove sanity, and can rely on factors already placed in evidence and the inferences which can be reasonably drawn therefrom. (*People v. Lono* (1973), 11 Ill.App.3d 443, 297 N.E.2d 349.) Since there was testimony of Detective George as to defendant's recollection of events on the day of the crime and the previous day, the jury might have concluded that defendant was lying to the psychiatrist who testified. The issue became a question of fact for the jury, and the jury had the burden of determining whether or not defendant was sane at the time of the commission of the crime. In *People v. Skeoch* (1951), 408 Ill. 276, 96 N.E.2d 473, the issue was not whether the State met its burden. In that case the State offered no evidence of sanity at all. The question was whether the defense had properly raised the insanity issue. The court held that the evidence produced by defense was sufficient to raise the insanity issue, and since there was no evidence presented to prove sanity, the conviction was reversed. (See also *People v. Redmond* (1973), 13 Ill. App.3d 604, 300 N.E.2d 786; *People v. Chmilenko* (1973), 14 Ill.App.3d 270, 302 N.E.2d 455.) In *People v. Taylor* (1971), 1 Ill.App.3d 1053, 275 N.E.2d 717, the psychiatrist for the State admitted that he could not render an opinion as to the legal sanity of the defendant at the time of the offense but that he could state that the accused was sane at the time of the trial. In the present case, unlike the cases referred to, prosecution presented some evidence which tended to establish the sanity of defendant at the time of the burglary. We, therefore, conclude that the jury could determine the question of whether or not defendant was sane or insane at the time of the commission of the crime, and there would be no basis for reversal of such determination in view of the record in this cause.

The remaining issue raises an interesting question with which we have concerned ourselves previously in *People v. Gilliam* (1974), 16 Ill. App.3d 659, 306 N.E.2d 352. In that case we concluded that it would be irrelevant for a psychologist to testify to those procedures and tests employed by him unless they formed a basis for a psychiatrist's opinion as to mental health. A case of considerable interest on this issue is *People v. Noble* (1969), 42 Ill.2d 425, 248 N.E.2d 96. In that case, the supreme court, in essence, concluded that a clinical psychologist could testify as to results he found, the nature of his procedures and certain tests he conducted at the request of a psychiatrist. It was also determined that the psychiatrist could consider the results observed and found by the

psychologist as a basis for diagnosis of the mental condition of the defendant, while the court recognized that there was a more perplexing question in determining whether any psychologist is qualified to diagnose the existence or nature of mental disease or mental defects and to determine whether there is a causal relationship between that disease or defect and the act complained of. The court stopped short of permitting a clinical psychologist to testify as to that issue. The court, however, did state that as the public and the court have become increasingly aware of the values of psychological testing and treatment, courts have inclined to be more likely to accept psychologists as experts, depending on the qualifications "of the individual witness * * * even to the extent of permitting the expression of opinions as to the mental condition of the individual." 42 Ill.2d 425, 434.

■■ On the basis of the precedents to which we have referred, however, we believe that the trial court acted properly in determining the extent to which the psychologist could testify in the instant case. He was permitted to testify, apparently without objection, on the basis of his knowledge and experience, that defendant was suffering from a mental defect or disease at the time of the burglary. He was not, however, allowed to testify as to whether defendant was sane at the time of the commission of the burglary, apparently on the basis that such conclusion is one involving judgment of an expert in the field of medicine—specifically, a trained psychiatrist.

While we have referred to a trend to permit a qualified psychologist to work effectively in the field of mental disease, we do not believe that any of the precedents in this State justify a conclusion that there was reversible error in the trial court in ruling that the psychologist, experienced as he was, could not testify as to the ultimate issue of defendant's insanity. *People v. Gilliam* (1974), 16 Ill.App.3d 659, 306 N.E.2d 352.

For the reasons stated, the judgment of the Circuit Court of Kankakee County will be affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.