THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHANDRA W. GILL, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LATASHA L. CAIN, Defendant-Appellant.

Fourth District    Nos. 4—03—1009, 4—03—1010 cons.

Opinion filed March 8, 2005.

Daniel D. Yuhas, Susan M. Wilham, and Jun Woo Hong, all of State Appellate Defender's Office, of Springfield, for appellants.

Julia Rietz, State's Attorney, of Champaign (Norbert J. Goetten, Robert J. Biderman, and Anastacia R. Brooks, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Defendants, Latasha L. Cain and Chandra W. Gill, were arrested for their actions at an Urbana high school basketball game on January 25, 2002. Cain was charged with aggravated battery on a public way (720 ILCS 5/12—4(b)(8) (West 2000)) and resisting a police officer (720 ILCS 5/31—1(a) (West 2000)). Gill was charged with aggravated battery on a public way (720 ILCS 5/12—4(b)(8) (West 2000)) and obstructing a police officer (720 ILCS 5/31—1(a) (West 2000)). Following an August 2003 jury trial, Cain was convicted of resisting a police officer, and Gill was convicted of aggravated battery on a public way. In October 2003, the trial court sentenced Cain to 12 months' conditional discharge and Gill to 18 months' conditional discharge. Defendants appeal. We affirm.

On January 25, 2002, defendants attended a basketball game between Urbana high school and Decatur MacArthur high school in Urbana. The game was tense, and several students were ordered to leave the game for misconduct, including going out onto the court. Because the gym was crowded, defendants sat in the east bleachers,

surrounded by Decatur fans and parents. With six seconds left in the game, an Urbana player hit a three-point shot to tie the game. The audience erupted, with most of the crowd rising from their seats. Officer Allen Johnston of the Urbana police department, who was off duty and working security at the game, saw several people, including Cain, go onto the basketball court after the shot was made and then return to their seats. Johnston was wearing a polo shirt emblazoned with "Urbana High School Security" instead of his police uniform, although he had his gun and badge on his belt. He approached Cain and tried to get her attention. Johnston testified that he called out, "Miss," several times but was unable to get Cain's attention. He then put his hand on her shoulder and told her that she needed to stay off the court. Cain replied that Johnston did not have the right to be close to her and asked him to get away from her. Johnston then backed up a little bit and asked Cain if she had understood what he said, but she made no response. Because Cain did not answer his question or acknowledge that she had to stay off the court, Johnston told her to leave the gym. When Cain made no effort to leave, Johnston told her that she had five seconds to leave, otherwise he would arrest her. After Johnston raised his hand and counted to five, he raised his handcuffs in his hand, signaling to other officers that he needed assistance to make an arrest.

Officer Deann Winn-Mauer, a school resource officer for Urbana schools, responded to Johnston's signal. Winn-Mauer, who was wearing a blue shirt with "City of Urbana Police Department" embroidered on it, showed Cain her badge and identified herself as a police officer. Winn-Mauer testified that she asked Cain to get up several times but Cain did not rise from her seat. Winn-Mauer then put her hand on Cain's arm and told her that she needed to stand up. Both Johnston and Winn-Mauer testified that Cain then leaned back and Gill wrapped her arms around her, saying that she was not going anywhere. Winn-Mauer told Cain that she was under arrest and started to pull on Cain's arms to make her stand up. Both Johnston and Winn-Mauer testified that Cain kept trying to pull her arms away and that her bulky coat with puffy sleeves prevented them from getting a good grip on her arms. Winn-Mauer also testified that Gill kept her arms wrapped around Cain until the officers got Cain onto her feet.

Once Johnston and Winn-Mauer got Cain out of her seat, they tried to get her out of the gym. Both Johnston and Winn-Mauer testified that Cain dragged her feet and struggled as they escorted her out. Johnston said that Cain's coat interfered because it was big and bulky and allowed Cain to move her arms around without the officers being able to get a good grip on them. Johnston also testified that Gill

grabbed him from behind several times, trying to free Cain, as they exited the gym.

In the hallway outside of the gym, Gill grabbed Johnston's shoulder, trying to pull him away from Cain. Johnston pushed Gill back and told her to back off. When Gill grabbed Johnston again, he pushed her away again and told her that if she did not stop, she would go to jail. Johnston then turned his attention back to Cain. While the officers were trying to place Cain against the wall, Gill grabbed Johnston around his neck and started choking him. He pushed her away again, but during the struggle, Gill ripped Johnston's shirt and scratched his neck, chest, and shoulder. When Johnston turned around again, Gill was lying on the floor. Gill testified that she suffered from a brain tumor and epilepsy and had frequent seizures. Dr. Pushpa Giri, who had examined Gill following the incident, testified that Gill most likely had a seizure, which sometimes includes involuntary movement of the body, including the hands.

Following the trial, a jury found Cain guilty of resisting a police officer but not guilty of aggravated battery. The jury found Gill guilty of aggravated battery but not guilty of obstructing a police officer. Counsel filed a motion for judgment notwithstanding the verdict, which the trial court denied. This appeal followed.

On appeal, defendants argue that (1) the trial court erred by allowing two State witnesses to use the term "resist" to describe Cain's actions, (2) the State failed to prove both defendants guilty beyond a reasonable doubt, and (3) they were denied effective assistance of counsel.

■ Defendants first argue that the trial court committed reversible error when it allowed two State witnesses to use the term "resist" to describe Cain's actions. Defendants argue that the witnesses were stating their opinion that Cain was resisting and that opinion testimony from lay witnesses is highly suspect. We disagree with this characterization of the testimony. The testimony at issue was from Preston Williams and Kevin Peters. In pertinent part, Williams's testimony was as follows:

> "WILLIAMS: Well, [Cain's] actions were basically trying to get her arm back. She was—I mean, Mauer, Winn-Mauer had her arm and was trying to get it behind her back. [Cain] was resisting that—
> DEFENSE COUNSEL: Objection.
> WILLIAMS: —happening.
> DEFENSE COUNSEL: Judge, I'm gonna object to a conclusion, a legal conclusion of resisting.
> THE COURT: Overruled. I believe he's describing the action he observed.

THE STATE: Go ahead. You saw her resisting. Could you describe what you saw her resisting?"

Peters's testimony included this exchange:

"THE STATE: As you watched them go halfway to the door, would you describe what, if anything, you saw the female's activity as she was being escorted out.

PETERS: It was very apparent that she was resisting to go with them."

Defendants also point out that the trial court did not allow a defense witness, Dennis Joyner, an off-duty Illinois State Trooper, to make a conclusion whether Cain was resisting.

"DEFENSE COUNSEL: Well, when you observed these individuals escorting this lady out, how would you characterize—or would you characterize the young lady's actions as resisting?

THE STATE: Objection.

THE COURT: Sustained."

We agree with the trial court's determination that neither Williams's nor Peters's testimony was a conclusion or an opinion but each was instead merely a description of the actions that they had seen. Defendants' claim that Williams and Peters were responding to leading questions about whether Cain was resisting is without merit. Both witnesses used the term "resisting" in answering an open-ended question about what actions they observed. Although, as defendants suggest, the witnesses could have used more specific or different terms in describing the actions they witnessed, they used the term "resisting" in a common, descriptive manner, not as a legal conclusion. When Joiner was asked whether Cain was resisting, however, defense counsel was clearly eliciting an opinion from a law enforcement officer. This was a leading question, and the court properly sustained the State's objection. We find no error in the trial court's ruling that the statements by Williams and Peters were admissible, descriptive testimony and not legal conclusions or opinions.

■ Defendants next argue that the State failed to prove either of them guilty beyond a reasonable doubt. In reviewing a challenge to the sufficiency of the evidence, if, after examining the evidence in the light most favorable to the State, a trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we will affirm the conviction. *People v. Smith*, 185 Ill. 2d 532, 541, 708 N.E.2d 365, 369 (1999). We will first review Cain's conviction for resisting a police officer.

Cain argues that the testimony regarding her physical resistance was both inconsistent and improbable. Cain first asserts that the evidence was contradictory on whether she was actively pulling away

from the officers trying to arrest her. Although several witnesses testified that they did not observe Cain struggling or trying to get away from the police, there were also multiple descriptions of Cain attempting to pull her arms away from the police, dragging her feet, and generally resisting going with the officers. It is the trier of fact's responsibility to determine the witnesses' credibility and the weight given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence; we will not substitute our judgment for that of the trier of fact on these matters. *People v. Ortiz*, 196 Ill. 2d 236, 259, 752 N.E.2d 410, 425 (2001). Enough evidence was presented at trial to show physical resistance on the part of Cain, and it was certainly within the province of the trier of fact to determine that she did physically resist arrest by the police.

■ Cain next argues that any action that she made pulling her arms away from the police was inadvertent and a reflexive reaction to the force used by the officers. Cain attempts to analogize this case to *City of Pekin v. Ross*, 81 Ill. App. 3d 127, 400 N.E.2d 992 (1980), in which the defendant's conviction for resisting arrest was reversed because the court found his hands reflexively pulled down after being pushed upward by an officer. However, in *Ross*, the defendant testified that the only time he struggled was when he involuntarily brought his arms down because of the severe pain caused by the method the police used to handcuff him. *Ross*, 81 Ill. App. 3d at 129, 400 N.E.2d at 993-94. Nothing supports this defense in the present case. Although Cain did testify that the grip used by the police was painful, nothing suggests that it caused a reflexive action on her part. Testimony was presented that she was dragging her feet and struggling the entire time the officers were escorting her out of the gym, not simply reflexively reacting to the hold of the police. The jury properly found Cain guilty beyond a reasonable doubt of resisting a police officer.

■ Gill argues that there was not enough evidence to prove that her contact with Johnston was intentional or knowing. Gill argues that she had a seizure when she made contact with Johnston and therefore lacked the mental capacity to recognize the criminality of her behavior. In support of her argument, Gill cites *People v. Chmilenko*, 14 Ill. App. 3d 270, 272, 302 N.E.2d 455, 457 (1973), in which the court stated that evidence that a "seizure 'during which the subject lacks conscious awareness of what he is doing, lacks conscious intent to do what he does,' tends to raise doubt as to his ability to form the specific intent" required by the statute. In *Chmilenko*, which was a case charging a prisoner with escape, unrebutted testimony was presented that the defendant had a seizure as he was being loaded into a transport from a police station. *Chmilenko*, 14 Ill. App. 3d at

271-72, 302 N.E.2d at 456. The police did not notice that the defendant had collapsed to the ground and loaded the other prisoners in the transport, leaving the defendant behind. *Chmilenko*, 14 Ill. App. 3d at 271-72, 302 N.E.2d at 456. No evidence showed that the defendant had the intent to escape, but the testimony was that he had a seizure, woke up, did not know where he was, and went to his home. *Chmilenko*, 14 Ill. App. 3d at 272, 302 N.E.2d at 456-57.

In this case, although some evidence suggested that Gill suffered a seizure, it was not clear whether the seizure occurred before or after she scratched Johnston and tore his shirt. Further, the evidence was clear that she consciously grabbed Johnston at least twice before she tore his shirt. Unlike in *Chmilenko*, this is evidence that Gill may have had the intent to attack Johnston prior to her seizure. A jury certainly could have determined that Gill's attack on Johnston was not the result of a seizure but instead another attempt to free Cain from the custody of the officers, after which she suffered a seizure. The State met its burden to prove Gill guilty of aggravated battery.

■ Finally, defendants argue that they were denied their constitutional right to effective assistance of counsel when their attorney did not tender essential jury instructions. Cain argues that the jury needed an instruction allowing it to consider whether she reasonably used force in self-defense when she was not aware that the persons accosting her were police officers. Gill argues that the jury needed an instruction of involuntary conduct or reasonable force in the defense of another. To show that trial counsel was ineffective, defendants must show (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984).

Cain argues that counsel was ineffective for failing to seek an instruction that she was justified in using reasonable force in self-defense. Failure to request a self-defense instruction constitutes ineffective assistance of counsel when such a failure was not a result of trial strategy. See *People v. Wright*, 111 Ill. 2d 18, 26-27, 488 N.E.2d 973, 977 (1986). However, all of the evidence in this case suggests that defense counsel's failure to seek such an instruction was due to trial strategy. Cain's defense was that she did not resist the officers. Cain presented multiple witnesses, including herself, who testified she did not struggle with the officers or try to keep from going with them. To seek an instruction saying that her resistance was in self-defense would be contrary to her counsel's trial strategy and is not error.

Gill argues that counsel was deficient for failing to tender any jury instruction on the defense of involuntary conduct. The key question is whether she knowingly attacked Johnston or whether her actions

were involuntary. Although an instruction on involuntary action would have been proper, the jury was instructed as to the definition of "knowingly." Included in the definition of "knowingly" that was submitted to the jury was the requirement that a defendant be "consciously aware" of her conduct. Defense counsel did argue to the jury that Gill did not knowingly attack Johnston because of her seizure. We do not see how Gill was prejudiced by counsel's choice to argue that the given instruction defining "knowingly" did not apply to her actions rather than providing a separate instruction that essentially restated the *mens rea* element in the negative. Defense counsel presented the same argument to the jury that he would have had an instruction been given defining involuntary conduct, and the jury was able to make a well-informed decision.

Gill also argues that her attorney was ineffective for failing to request a jury instruction on justifiable use of force in defense of another. We find no merit in this argument. When Gill attacked Johnston, Winn-Mauer had already clearly identified herself as a police officer and shown her badge. No evidence suggested that the police used excessive force of a nature that would require a bystander to act in defense of another. Defense counsel did not err in failing to seek such an instruction.

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

APPLETON and McCULLOUGH, JJ., concur.