NO. 4-05-0531          Filed 4/13/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| WILLIAM LEROY OWENS, | ) | No. 04CF65 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Ronald C. Dozier, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In January 2005, a jury convicted defendant, William Leroy Owens, of attempt (first degree murder) of Mary Griffin (720 ILCS 5/8-4(a), 9-1 (West 2004)), and the trial court later sentenced him to 24 years in prison.

Defendant appeals, arguing only that the State improperly elicited the victims' opinions that defendant intended to kill Griffin and another victim. We affirm.

I. BACKGROUND

In January 2004, the State charged defendant with attempt (first degree murder) of Griffin (720 ILCS 5/8-4(a), 9-1 (West 2004)) (count I); attempt (first degree murder) of Griffin's daughter, Kourtney Davis (720 ILCS 5/8-4(a), 9-1 (West 2004)) (count II); domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2004)) (count III); and unlawful use of a weapon by a felon

(720 ILCS 5/24-1.1(a) (West 2004)) (count IV).  The attempt counts charged defendant with taking a substantial step toward commission of the offense of first degree murder in that he poured gasoline on Griffin and Davis and attempted to ignite the gasoline with a lighter.

Following a November 2004 trial, a jury convicted defendant of counts III and IV.  However, the jury could not reach a verdict on either attempt count.

Defendant's second jury trial on the attempt (first degree murder) charges occurred in January 2005.  Because defendant does not challenge the sufficiency of the evidence, we review it only to the extent necessary to place defendant's argument in context.

Griffin testified that on January 16, 2004, she was living with Davis (who was then 12 years old) and defendant in a townhome.  Neither Griffin nor defendant smoked.  In the early evening, Griffin and defendant ran some errands together and got gas for Griffin's car.  Griffin then dropped defendant off at their residence and went to visit some friends.

When Griffin returned home close to midnight, Davis was there, but defendant was not.  Griffin went upstairs and prepared for bed.  As she did so, the doorbell rang downstairs.  Davis went downstairs, opened the door, and saw defendant standing there.  (This was unusual because he had a key to the residence.)

Defendant told Davis to tell Griffin to come downstairs. Davis did so, but Griffin did not want to go downstairs because she was tired. She then heard defendant say, in a harsh and angry tone of voice, "Tell her to come down right now." Griffin yelled from the top of the stairs to defendant, "What are you talking about?" Defendant responded, "I am tired of this shit, I am tired of you punking me. We are going to settle this now."

Griffin then said, "What are you talking about? What is going on?" Defendant responded, "So, you want to involve your daughter in this?" That caught Griffin's attention, but she still had no idea what defendant was talking about. At the time, Davis was in the kitchen. Griffin told defendant that he should come upstairs so they could talk.

Defendant then ran upstairs, and Griffin saw him reach down toward his left side. Things happened quickly at that point, and the next thing Griffin remembered was Davis saying, "Don't hit my mom like that." Griffin then felt liquid on her head and face. She did not know what it was until she smelled that it was gasoline. Defendant was facing her and "just pouring" the gasoline on her as if he "had a hose." At this point, Griffin saw defendant throw gasoline on Davis, who was then standing next to them.

Griffin then heard a "click, click, and [she looked] up and [defendant] had, in his hand, a lighter, a blue lighter."

- 3 -

When Griffin heard it clicking and saw sparks, she panicked.

All of these events happened in a matter of seconds as defendant stood just a few feet away from Griffin. Griffin grabbed the collar of defendant's coat and pulled it toward her. Defendant then dropped the container and the lighter, and Griffin told Davis to run. Davis ran outside with a phone in her hand.

The prosecutor then (without objection) asked Griffin what her physical condition was at that point during the incident and what she was then thinking. Griffin responded as follows: "I am thinking this man had every intention of trying to set me on fire. He comes in the house with gasoline, runs upstairs[,] and douses me with it and douses my daughter[,] and I see a lighter in his hand flicking it."

Griffin also testified that she and defendant then struggled, and he began to choke her. She struck him in the face and knocked his glasses off.

The prosecutor then (again, without objection) asked Griffin, "What did you think he was doing when he was trying to get his hands around your throat?" She responded, "He was trying to kill me. He couldn't do it with the lighter and the fluid, now he was going to try to do it with his hands."

Griffin further testified that after she struck defendant, he ran toward the bedroom, paused there, and then ran back

at her. He pushed her "real hard," and then started to choke her again. As she was fighting him off, she heard police sirens. Defendant then stopped choking her and got up off the floor. Griffin ran outside where she saw Davis in the parking lot with some people who were protecting her. The police arrived shortly thereafter and arrested defendant.

Davis testified consistently with Griffin's testimony. At one point, the prosecutor asked Davis, "When you were in the kitchen with your mom and the defendant and he was flicking gas and flicking the lighter[,] what did you think he was trying to do?" She answered, "Kill us."

The State called several other witnesses, including four police officers and a fireman. They all corroborated Griffin's testimony. Other evidence established that defendant had purchased gasoline earlier that same evening from a gas station not far from Griffin's residence. Defendant pumped the gasoline into a milk jug until the clerk of the gas station noticed, shut the pump off, and offered him a gas can instead.

The trial court also admitted in evidence a videotaped statement defendant made to the police on the night of the incident. During that statement, defendant said that after Griffin left to visit friends, he decided to buy more gasoline for Griffin's car. He took a milk container to the gas station and put gasoline in it. He paid for the gasoline and other

items, including a lighter.  As he walked home, the cap came off the milk jug, and he spilled some on himself.  He admitted arguing with Griffin at the top of the stairs but explained that he spilled gasoline on Griffin and Davis only because he waved the jug around as they argued.  He denied removing the lighter from his pocket or touching Griffin.

The trial court advised defendant of his right to testify, and he declined to do so.  On this evidence, the jury convicted defendant of attempt (first degree murder) of Griffin but acquitted him of attempt (first degree murder) of Davis.

In March 2005, the trial court sentenced defendant to (1) 24 years in prison for attempt (first degree murder), (2) 5 years in prison for unlawful use of a weapon, and (3) 364 days in jail for domestic battery, with those sentences to run concurrently.

This appeal followed.

## II. DEFENDANT'S CLAIM THAT THE STATE IMPROPERLY ELICITED THE VICTIMS' OPINIONS THAT HE INTENDED TO KILL THEM

Defendant argues that the State improperly elicited the opinion testimony of Griffin and Davis that defendant intended to kill them.  Specifically, he contends that Griffin and Davis were laywitnesses, not experts, and "[l]aywitness testimony is especially improper when it goes to the ultimate question of fact that is to be decided by the jury.  People v. McClellen, 216 Ill. App. 3d 1007, [1013,] 576 N.E.2d 481, 486 (1991)."  In support of

- 6 -

this argument, defendant also cites People v. Crump, 319 Ill. App. 3d 538, 542-43, 745 N.E.2d 692, 696-97 (2001), in which the appellate court, citing McClellen approvingly, reversed the defendant's conviction because a police officer was permitted to state his opinion "about the ultimate disputed fact [of] the case."

In response, the State argues that defendant has forfeited this issue on appeal because he did not object when either Griffin or Davis so testified nor did he raise this issue in his posttrial motion. In response to the State, defendant contends that his procedural default may be excused as plain error. However, before addressing whether the complained-of testimony constitutes plain error, we will first determine whether it constitutes any error at all. See People v. Sims, 192 Ill. 2d 592, 621, 736 N.E.2d 1048, 1063 (2000) ("Before invoking the plain[-]error exception, however, 'it is appropriate to determine whether error occurred at all.' People v. Wade, 131 Ill. 2d 370, 376[, 546 N.E.2d 553, 555] (1989)").

A. The Discredited "Ultimate Fact" Doctrine
Regarding Opinion Testimony

As stated above, defendant's primary contention regarding the testimony of Griffin and Davis that defendant intended to kill them is that, in accordance with McClellen, it constituted lay opinion testimony that "is especially improper when it goes to the ultimate question of fact that is to be decided by the

jury." However, decisions rendered by the Supreme Court of Illinois since McClellen make clear that the above holding is no longer good law.

In Zavala v. Powermatic, Inc., 167 Ill. 2d 542, 544, 658 N.E.2d 371, 373 (1995), the supreme court wrote the following:

> "It has been settled for some time that ex-
> pert opinion testimony on an ultimate fact or
> issue does not impermissibly intrude on the
> fact finder's role. [Citation.] That notion
> applies in both civil and criminal contexts
> in this State so long as all other require-
> ments for the admission of expert testimony
> are met. [Citations.] The reason: the
> trier of fact is not required to accept the
> expert's conclusion."

In People v. Terrell, 185 Ill. 2d 467, 496, 708 N.E.2d 309, 324 (1998), the defendant argued on appeal that the trial court abused its discretion by permitting a police detective to testify that he had never before seen injuries like those suf-fered by the victim. Specifically, the defendant contended that because the trial court erred by determining that the detective was an expert witness, the detective was improperly permitted to testify to his opinion of an ultimate issue of fact--namely, the

exceptionally brutal or heinous nature of the crime. The supreme court rejected defendant's argument, explaining as follows:

> "Initially, we note that it is now well settled that a witness, <u>whether</u> <u>expert</u> <u>or</u> <u>lay</u>, may provide an opinion on the ultimate issue in a case. [Citation.] This is so because the trier of fact is not required to accept the witness' conclusion and, therefore, such testimony cannot be said to usurp the province of the jury." (Emphasis added.) <u>Terrell</u>, 185 Ill. 2d at 496-97, 708 N.E.2d at 324.

In <u>People v. Raines</u>, 354 Ill. App. 3d 209, 220, 820 N.E.2d 592, 601 (2004), this court cited approvingly <u>Terrell</u>'s holding that a witness, whether expert or lay, may provide an opinion as to the ultimate issue in the case. See also <u>People v. Reatherford</u>, 345 Ill. App. 3d 327, 341, 802 N.E.2d 340, 353 (2003) (also citing <u>Terrell</u> approvingly).

Further, in his treatise on Illinois evidence law, Professor Michael H. Graham notes that the "modern trend is firmly in accord" with the supreme court decisions in <u>Zavala</u> and <u>Terrell</u>. Graham also notes that "<u>Wigmore</u> dismissed the common[-]law ultimate[-]issue rule as 'a mere bit of empty rhetoric.'" Graham, Cleary & Graham's Handbook of Illinois Evidence §704.1,

at 585 (8th ed. 2004), quoting 3 J. Wigmore, Evidence §1920 (Chadbourn rev. ed. 1974).

Accordingly, we reject defendant's argument that the lay opinion testimony of Davis and Griffin "is especially improper" because it went to the ultimate question of fact that is to be decided by the jury. To the extent that McClellan supports defendant's effort to resurrect the now-discredited "ultimate fact" doctrine, we decline to follow McClellan and its progeny.

## B. Lay Opinion Testimony

Leaving aside defendant's initial reliance on the discredited "ultimate fact" doctrine, we still must address the appropriateness of the lay opinion testimony presented in this case. As Professor Graham explains, "The fact that an opinion or inference is not objectionable because it embraces the ultimate issue does not mean, however, that all opinions embracing the ultimate issue must be admitted, for the criterion of helpfulness is applicable to both lay and expert witnesses alike." M. Graham, Cleary & Graham's Handbook of Illinois Evidence §704.1, at 585 (8th ed. 2004).

Additionally, lay opinion testimony, like all other evidence, must also be relevant to be admissible. As this court explained in Maffett v. Bliss, 329 Ill. App. 3d 562, 574, 771 N.E.2d 445, 455-56 (2002), one of the tests that a trial court may use when evaluating relevance is to ask how it would view the

evidence if it were the trier of fact.  That is--would the proposed evidence assist the court in resolving questions of fact?  If not, then the evidence should be excluded.

In People v. Novak, 163 Ill. 2d 93, 102, 643 N.E.2d 762, 767 (1994), abrogated on other grounds by People v. Kolton, 219 Ill. 2d 353, 848 N.E.2d 950 (2006), the Supreme Court of Illinois discussed the admissibility of lay witness opinion testimony as follows:

> "Lay witness opinion testimony is admissible where the facts could not otherwise be adequately presented or described to the fact finder in such a way as to enable the fact finder to form an opinion or reach an intelligent conclusion.  Lay witnesses may relate their opinions or conclusions on what they observed because it is sometimes difficult to describe a person's mental or physical condition, character[,] or reputation, or the emotions manifest by his or her acts; or things that occur and can be observed, including speed, appearance, odor, flavor, and temperature."

Professor Graham has set forth the following helpful analysis:

> "A clear line between fact and opinion

- 11 -

is impossible to draw. In a sense all testimony to matters of fact is the conclusion of the witness formed from observed phenomena and mental impressions. Witnesses who are accustomed in speaking to include opinions in describing events often find any line difficult to draw. It is more helpful to the jury to hear such a witness speak naturally than to have him harried by objections that he is improperly giving his opinion." M. Graham, Cleary & Graham's Handbook of Illinois Evidence §701.1, at 516-17 (8th ed. 2004).

Another way of evaluating the admissibility of lay opinion testimony is to observe that it is admissible when the witness would have difficulty explaining the facts upon which the opinion or inference is based, or where the opinion is of a condition that the witness could not easily describe. For example, in People v. Gill, 355 Ill. App. 3d 805, 808-09, 825 N.E.2d 339, 342 (2005), this court concluded that the trial court did not abuse its discretion by determining that two State witnesses properly used the term "resisting" in a resisting-arrest case when they answered an open-ended question about what actions they observed. We noted that the witnesses used the term resisting "in a common, descriptive manner, not as a legal

conclusion." Gill, 355 Ill. App. 3d at 809, 825 N.E.2d at 342-43.

We note that a threshold requirement for the admission of expert testimony is that the proffered testimony be of assistance to the trial court or jury. People v. Henderson, 171 Ill. 2d 124, 157, 662 N.E.2d 1287, 1304 (1996). As Professor Graham has noted, the same standard applies to the admission of lay opinion testimony. See, for example, People v. Jones, 241 Ill. App. 3d 228, 232, 608 N.E.2d 953, 956 (1993) (in which the court held that a lay witness may testify in the form of an opinion only if the testimony is helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; noting that like the admission of expert opinion testimony, the matter is left to the trial court's discretion); People v. Armstrong, 183 Ill. 2d 130, 156-57, 700 N.E.2d 960, 972 (1998) (in which the supreme court concluded that the trial court did not abuse its discretion by permitting a lay witness to express his opinion--namely, that he had never seen a disciplinary record worse than the defendant's).

In this case, in the absence of any objection to the opinion of Griffin and Davis, the trial court had no opportunity to exercise its discretion. We thus decline to conclude, as a matter of law, that no error occurred in the admission of this lay opinion testimony. Accordingly, we will analyze the issue

- 13 -

under the plain-error doctrine.

C. Plain-Error Doctrine

In People v. Herron, 215 Ill. 2d 167, 178-79, 830 N.E.2d 467, 475 (2005), our supreme court discussed the plain-error doctrine, as follows:

"The plain-error doctrine, as it has developed in Illinois, allows a reviewing court to reach a forfeited error affecting substantial rights in two circumstances. First, where the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence, a reviewing court may consider a forfeited error in order to preclude an argument that an innocent person was wrongly convicted. [Citations.] Second, where the error is so serious that the defendant was denied a substantial right, and thus a fair trial, a reviewing court may consider a forfeited error in order to preserve the integrity of the judicial process. [Citations.] This so-called disjunctive test does not offer two divergent interpretations of plain error, but instead two different ways to

- 14 -

ensure the same thing--namely, a fair trial."
The Herron court also stated as follows:

> "We reiterate:  the plain-error doctrine
> bypasses normal forfeiture principles and
> allows a reviewing court to consider
> unpreserved error when either (1) the evi-
> dence is close, regardless of the seriousness
> of the error, or (2) the error is serious,
> regardless of the closeness of the evidence.
> In the first instance, the defendant must
> prove 'prejudicial error.'  That is, the
> defendant must show both that there was plain
> error and that the evidence was so closely
> balanced that the error alone severely
> threatened to tip the scales of justice
> against him.  The State, of course, can re-
> spond by arguing that the evidence was not
> closely balanced, but rather strongly
> weighted against the defendant.  In the sec-
> ond instance, the defendant must prove there
> was plain error and that the error was so
> serious that it affected the fairness of the
> defendant's trial and challenged the integ-
> rity of the judicial process."  Herron, 215

Ill. 2d at 186-87, 830 N.E.2d at 479-80. See also People v. Keene, 169 Ill. 2d 1, 17, 660 N.E.2d 901, 909-10 (1995) ("Plain error marked by 'fundamental [un]fairness' occurs only in situations which 'reveal breakdowns in the adversary system,' as distinguished from 'typical trial mistakes' [Citation.]").

In accordance with these principles, we conclude that the admission of the lay opinion testimony in this case falls far short of constituting plain error. In so concluding, we first note that the evidence was not closely balanced but was, instead, strongly weighted against defendant. In particular, the evidence showed that (1) immediately prior to arriving at the residence, defendant purchased gasoline and a lighter; (2) defendant was angry and yelling at Griffin; (3) defendant poured gasoline on Griffin; (4) defendant attempted to ignite Griffin with the lighter; (5) defendant physically attacked and choked Griffin; and (6) defendant's version of events was incredible.

Defendant attempts to make much of his acquittal of attempt (first degree murder) concerning Davis. He contends that this demonstrates the closeness of the evidence, but we are not persuaded. Instead, given that the State needed to prove beyond a reasonable doubt that defendant specifically intended to kill Davis when he was splashing the gasoline, the jury could conceivably have found on this evidence that his splashing of gasoline

on Davis was inadvertent and collateral to his real purpose and intent, which was to douse Griffin in gasoline and ignite her.

Further, we note that any alleged error in allowing the testimony was not so serious that it affected the fairness of defendant's trial or challenged the integrity of the judicial process.  In light of the other evidence, it is hard to imagine what defendant's intent could have been other than to kill Griffin, and, thus, Griffin and Davis merely stated the obvious. Defendant speculates that he could have been attempting merely to frighten Griffin and Davis by dousing them with gasoline. However, this alternative theory is unavailing, given the evidence that defendant attempted to ignite the gasoline with a lighter that he just purchased with the gasoline.

Accordingly, we conclude that the plain-error doctrine does not apply here.

As a final matter, we note that defense counsel's failure to object to the complained-of testimony may well have been the result of a sound trial strategy.  Experienced trial lawyers understand that they should object not just when a question may be technically objectionable, but when the question and answer may be damaging to their case.  Given the overwhelmingly compelling nature of the inference regarding defendant's intent, defense counsel may have opted not to object to this testimony, either because objecting would serve to highlight the

testimony or to give the jury the impression that counsel was seeking to obstruct proceedings.

Nor do we mean to criticize the trial court. After all, absent exceptional and compelling circumstances, a trial court is not expected to intrude itself into the proceedings, absent an objection, when a witness is testifying. In our adversarial system, the trial court should remain neutral between the parties and may appropriately depend upon opposing counsel to object if counsel believes some impropriety is occurring regarding that testimony.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2001(a) (West 2004); see also People v. Smith, 133 Ill. App. 3d 613, 620, 479 N.E.2d 328, 333 (1985), citing People v. Nicholls, 71 Ill. 2d 166, 179, 374 N.E.2d 194, 199 (1978).

Affirmed.

APPLETON and McCULLOUGH, JJ., concur.