THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MIGUEL DIAZ, Defendant-Appellant.

First District (5th Division)   No. 83—185

Opinion filed March 30, 1984.

Melinda Power, of West Town Community Law Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Garritt E. Howard, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was convicted of resisting arrest (Ill. Rev. Stat. 1981, ch. 38, par. 31—1), acquitted of two battery charges, and sentenced to a one-year term of work release. On appeal, defendant contends that: (1) the trial court's refusal to ask a question concerning racial bias during the *voir dire* of prospective jurors violated his sixth amendment right to an impartial jury; (2) the State injected improper comment which denied him his sixth amendment right to a fair trial; and (3) the State produced insufficient evidence to establish his guilt beyond a reasonable doubt. For reasons stated below, we affirm the judgment of the trial court.

Before trial, defendant submitted a question for *voir dire*. Although no record was made of *voir dire* proceedings, defense counsel referred in post-trial argument to "questions on *voir dire* concerning prejudice against Mr. Diaz because he is Mexican." The trial court refused the question or questions, but asked "Looking at the defendant, is there anything about his appearance that would cause you to be sympathetic towards him or prejudiced against him?"

The following facts were adduced at trial.

Chicago police officers James Purtell and Anton Wenskus were in uniform and on routine patrol shortly before midnight on July 17,

1982, when they responded to a call and went to 5258 South Hermitage in Chicago, Illinois. According to the officers, they approached a side window at that address and informed the occupants that someone had complained of loud music. The officers then went to the front door and spoke with several of the occupants in broken English and Spanish.

Wenskus testified that defendant repeatedly asked who had complained. When he received an unsatisfactory response, defendant became abusive verbally, then assumed a karate stance and kicked both officers. A struggle ensued, during which the officers together succeeded in putting one handcuff on defendant. Wenskus called for assistance while Purtell continued to struggle with defendant; defendant surrendered when another squadrol arrived. Officer Wenskus stated that he neither struck defendant, nor saw Officer Purtell strike him. Purtell substantially corroborated Wenskus' testimony: he admitted striking defendant, but denied using his baton.

Defendant, his wife, brother-in-law and sister-in-law all testified for the defense. The testimony of Mrs. Diaz, given through an interpreter, is representative. She stated that the police knocked on the window with their billy clubs and yelled to stop the music and open the door. While the police spoke with her brother, defendant asked why they had to lower the music. According to Mrs. Diaz, one of the officers pushed defendant and told him to "shut up." Defendant held out his hands and said, "If I'm doing something wrong, then you can arrest me." The officers began to beat defendant with their billy clubs. One of the officers threw defendant to the ground and struck defendant's head against the pavement. When the squadrol arrived, the police carried him to it and threw him in.

The State introduced photographs depicting Officer Purtell's injuries on July 18, 1982, as rebuttal. In closing argument, the assistant State's Attorney commented that only relatives of defendant testified for the defense, despite the fact that many neighborhood people saw the incident.

Following deliberations, the jury returned a verdict of guilty on the charge of resisting arrest and verdicts of not guilty on two charges of battery. Defendant was sentenced to one year of work release. Defendant appeals.

OPINION

Initially, defendant contends that because racial prejudice was likely, the general question concerning prejudice asked of prospective jurors was inadequate, and the trial court was required to ask the

question tendered by defendant. He concedes that his Latino ancestry was apparent to prospective jurors, but argues that a more specific question would have elicited grounds to challenge jurors for cause and enabled him to exercise peremptory challenges more effectively. At the outset we note that there is no record of *voir dire* proceedings had in this case, and though reference was made post-trial to questions tendered for *voir dire*, the precise question or questions at issue appear nowhere in the record.

This court has declined to upset the trial court's judgment where appellant failed to provide a *voir dire* record adequate to support a claim of prejudiced veniremen. (*People v. Robinson* (1981), 102 Ill. App. 3d 884, 891, 429 N.E.2d 1356; *People v. Bracey* (1981), 93 Ill. App. 3d 864, 870, 417 N.E.2d 1029.) We noted in *People v. Aldaco* (1982), 107 Ill. App. 3d 672, 437 N.E.2d 905, that it is appellant's responsibility to see that the record enables the reviewing court to resolve the issue, and that failure to do so would constitute a waiver. In *Aldaco*, the appellant provided a transcript of *voir dire*, but the record failed to disclose the crucial questions which were submitted to the trial court and refused. (107 Ill. App. 3d 672, 678, 437 N.E.2d 905.) By comparison, the record before us is woefully inadequate. Not only do we lack any specific question which defendant urges would have shown "feelings toward or experiences with Mexicans" preventing impartiality, we do not know how many or in what manner challenges to veniremen were made or received, or what admonitions were given, so as to enable us to assess possible prejudice. Accordingly, we find that defendant has waived review of this issue.

Yet defendant asks that the issue be decided upon the post-trial record. If we reached the merits, we would hold that the trial court committed no error by refusing the tendered question. Defendant relies upon *Ham v. South Carolina* (1973), 409 U.S. 524, 35 L. Ed. 2d 46, 93 S. Ct. 848, for the proposition that a trial court commits constitutional error when it refuses to inquire into racial bias in a case where such bias is likely to affect the jury. The State points to two subsequent cases decided by the supreme court, *Ristaino v. Ross* (1976), 424 U.S. 589, 47 L. Ed. 2d 258, 96 S. Ct. 1017, and *Rosales-Lopez v. United States* (1981), 451 U.S. 182, 68 L. Ed. 2d 22, 101 S. Ct. 1629, which limited the holding in *Ham*. *Ham* involved a well-known black civil rights activist who claimed that he was "framed" on a charge of possessing marijuana. The supreme court concluded on the facts of that case that petitioner was entitled to inquire whether veniremen were prejudiced against blacks. (*Ham v. South Carolina* (1973), 409 U.S. 525, 527, 35 L. Ed. 2d 46, 50, 93 S. Ct. 848, 850.)

The *Ristaino* court addressed the issue whether *Ham* required such inquiry whenever a criminal trial involved a confrontation between persons of different races or ethnic origins. The court noted that racial issues were "inextricably bound up" with the trial in *Ham*, and held that the determination of impartiality was discretionary with the trial court in the usual case. (*Ristaino v. Ross* (1976), 424 U.S. 589, 594-98, 47 L. Ed. 2d 258, 263-65, 96 S. Ct. 1017, 1020-22.) *Rosales-Lopez* reiterated this distinction between *Ham* and *Ristaino* by holding that the Constitution requires specific inquiry only where substantial indications of prejudice appear. *Rosales-Lopez v. United States* (1981), 451 U.S. 182, 189-90, 68 L. Ed. 2d 22, 29, 101 S. Ct. 1629, 1634-35.

■ We do not believe that this case presents substantial indications of racial or ethnic prejudice which were inextricably bound up with the conduct of the trial. Apparently, neither officer knew defendant before the incident. The officers responded to a complaint about loud music, and the incident escalated. The only issue of race or ethnic origin was in the confrontation between white police officers and the defendant who is Mexican, and in our opinion, this incident does not give rise to a constitutional claim.

■ Defendant next contends that the assistant State's Attorney's comment on defendant's failure to call additional witnesses diluted his presumption of innocence. Arguments which diminish the presumption of innocence are forbidden. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432.) However, comments must be considered in context (*People v. Toth* (1982), 106 Ill. App. 3d 27, 435 N.E.2d 748), and where defense counsel's argument invites or provokes a response, the prosecutor's reply may be deemed proper. (*People v. Morano* (1979), 69 Ill. App. 3d 580, 387 N.E.2d 816.) Even comments which might be improper will not warrant reversal unless they are a material factor in defendant's conviction. *People v. Dowd* (1981), 101 Ill. App. 3d 830, 848-49, 428 N.E.2d 894.

■ When considered in context, the prosecutor's remarks did not so prejudice the jury as to warrant reversal. The assistant State's Attorney argued that defendant's version of events was incredible in that both sides agreed that many neighborhood people gathered to observe the incident, but not a single person complained of police brutality. Defense counsel responded by arguing that it is the responsibility of the police, not the citizens, to complain about such misconduct. Defense counsel noted that no police made any complaints about defendant's condition, but that the defense witnesses were citizens, and they had come forward. In rebuttal, the assistant State's Attorney argued

that all of the defense witnesses were related to defendant, and none of the neighbors testified for the defendant. No objection was made to this remark. Defendant objected when the assistant State's Attorney said, "If in fact they were on the ground beating him the entire time, where is anybody besides ***." This summary demonstrates that the remarks were understood as pertaining to the bias of the witnesses and the credibility of their story. So understood, the remarks were proper. The implication that defendant's failure to call these people as witnesses could be used by the jury as proof of guilt is simply too remote to constitute reversible error.

■ Finally, defendant contends that he was not proved guilty beyond a reasonable doubt. He states that his inability to speak English indicates that the officers lied and that he could not have known that he was being arrested. Further, defendant argues that the jury returned inconsistent verdicts, indicating their disbelief of the officers' testimony.

The fact that defendant was acquitted of battery suggests nothing more than an exercise of leniency by the jury. (See *People v. Dawson* (1975), 60 Ill. 2d 278, 280-81, 326 N.E.2d 755, *cert. denied* (1975), 423 U.S. 835, 46 L. Ed. 2d 54, 96 S. Ct. 61.) To convict defendant of resisting arrest, the jury need only have believed that defendant knew that James Purtell and Anton Wenskus were peace officers and that defendant knew that he was obstructing them in their official capacity. (See Ill. Rev. Stat. 1981, ch. 38, par. 31—1.) The evidence indicated that the officers were in uniform and that there was a physical struggle; this evidence alone was sufficient. The jury's assessment of the credibility of witnesses and weight to be given their testimony will not be disturbed. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) There was evidence that defendant understood English, but the jury's determination on this point was incidental. We therefore reject defendant's contention that the State failed to prove his guilt beyond a reasonable doubt.

For the foregoing reasons, the judgment of the circuit court is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 costs in this appeal.

Affirmed.

MEJDA, P.J., and SULLIVAN, J., concur.