No. 2--97--0162

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Lee County.

)

Plaintiff-Appellee, )

) No. 96--CM--824

v. ) 

)

BRENDA J. COPE, ) Honorable

) Martin D. Hill,

Defendant-Appellant. ) Judge, Presiding.

________________________________________________________________

JUSTICE BOWMAN delivered the opinion of the court:

Following a bench trial, defendant, Brenda J. Cope, was convicted of resisting or obstructing a peace officer (720 ILCS 5/31--1(a) (West 1996)).  The trial court sentenced her to one year of conditional discharge and 30 hours of public service work.  Defendant appeals, arguing that she was not proved guilty beyond a reasonable doubt.  We reverse.

Andrea Kozuch testified that she was 13 years old and a resident of Nachusa Lutheran Home (Nachusa Home).  She ran away on the afternoon of October 15, 1996.   At 1 a.m. on October 16, she was walking around the town of Dixon.  She became scared when some men in a truck began following her and asking if she wanted a ride.  She met defendant when defendant was walking out of a bar.  Defendant asked her what she was doing out so late, and Kozuch responded that people were following her and that she had to go to the bathroom.

Defendant was the owner of First Street Diner, which was closed at the time.  Defendant took Kozuch there and let her use the bathroom.  Defendant locked the door after they were inside.  Kozuch watched T.V. for a while and eventually asked to leave.  Defendant told her not to leave, that she should sleep there, and that they would take care of everything in the morning.

Defendant and Kozuch talked about Kozuch having run away, and Kozuch asked if she could call her mother.  Defendant let her make the call, and Kozuch talked to her mother for a short while before the connection went bad.  Kozuch called back and defendant got on the phone, called Kozuch's mother a liar, and said she did not treat her daughter right.

The police arrived at approximately 1:30 a.m. and tried to get in the door of the diner, but it was locked.  When the police came, defendant told Kozuch that she was not going to let her go and that they would take care of it in the morning.  Kozuch ate ice cream while defendant spoke to the police.  Kozuch testified that she asked defendant two or three times to let her go, and defendant would not open the door.

Defendant let Kozuch sleep on a chair that folded out into a bed.  Kozuch heard the police yelling into the diner at defendant, and defendant told them she and Kozuch would take care of everything in the morning.  Kozuch finally left the diner shortly after 8 a.m. when an employee who was coming to work unlocked the door and let the police in.

On cross-examination, Kozuch conceded that the reason she asked to leave the restaurant was that she wanted to avoid being picked up by the police.  She explained that when she asked to leave it was before the police arrived, because she wanted to find someplace else to stay.  Kozuch testified that she never feared that she was in any danger from defendant.  Kozuch further conceded that she was never restrained in any way and could have gone to the window to let the police know if she had been in any danger.  

Kozuch denied that she ever threatened suicide that night or told defendant not to turn her over to the police.  She explained that she told defendant that she had previously tried to kill herself when she was in a psychiatric ward at SwedishAmerican Hospital.  She also told defendant that she felt she had been touched in an unlawful manner at the Nachusa home.

Bruce Luther of the Dixon police department testified that he was working the 11 p.m. to 7 a.m. shift on October 15-16, 1996.  He received a dispatch that a runaway was at the First Street Diner.  The dispatcher had received a call from the Nachusa Home.  Luther went to the back door and Officer Gillfillan went to the front door.  They knocked on the doors and said they were police officers but received no response.  They tried both doors and found that they were locked.  They had the dispatcher call the restaurant, and defendant told the dispatcher she would not open the door.

When Officer Palumbo took over for Luther, Luther went back to the station to do some paperwork.  He received a call from defendant, who told him to stop harassing her.  Defendant said that she needed to get some sleep and would open her business in the morning.  Luther told her that they were trying to take care of a call they were handling and that she needed to turn the child over.  Luther went back to the restaurant until he was relieved by Officer Whelan at 7 a.m.  He then went back to the police station and signed the complaint against defendant.

On cross-examination, Luther testified that defendant never displayed any type of physical resistance.  She just would not open the door or turn the juvenile over.  He conceded that he was investigating a nonfelony complaint and did not have a warrant but wanted to be let inside defendant's restaurant.  He also testified that he did not necessarily want to enter.  He just wanted the minor to be released.

Officer Les Shaw of the Dixon police department testified that he worked the 7 a.m. to 3 p.m. shift on October 16, 1996.  He went to the First Street Diner at approximately 7:45.  He found Officer Gillfillan speaking to defendant and Kozuch.  An employee had let the police into the diner.  Shaw handcuffed defendant and took her to the police station.  Defendant was upset and was swearing on the way to the police station.  She complained about the officers shining flashlights through the windows while she was trying to sleep.

The defense moved for a directed verdict at the close of the State's case.  The defense argued that defendant had no duty to let the officers in without a warrant and that she did not physically obstruct them in any way.  The court ruled that she had a duty to turn over a juvenile runaway.  The defense then argued that if that was the court's position the State had charged the wrong offense and defendant should have been charged with the petty offense of refusing to aid a police officer (720 ILCS 5/31--8 (West 1996)).  The court ruled that defendant's conduct was also covered by the obstructing statute and denied the motion.

The defense recalled Kozuch to testify.  Kozuch testified that she told defendant about the men who had been following her in the truck and about what she believed to be a sexually inappropriate contact by a counselor at the Nachusa Home.  She believed defendant was trying to help her.  When asked about whether she wanted to leave the diner to go back to the Nachusa home, she replied "no."  She also testified that the reason she wanted to leave the diner was that she wanted to get away from the police since she thought they had seen her.  Kozuch also testified that at one point before the police arrived she went outside the diner to pet a dog and voluntarily went back inside.  When specifically asked if defendant would have let her leave, Kozuch replied "had the doors locked and I asked her numerous times if I could leave and she said no, you can stay tonight, get some rest, some sleep, and we'll take care of it tomorrow morning."

Defendant testified that on October 16, 1996, at approximately 1:30 a.m., she had just bought some cigarettes at a gas station and was walking to the diner.  She denied that she had been in a bar or had been drinking.  She was going to spend the night at her restaurant because she did not have a way to get back to her home in Rock Falls.  Kozuch walked up to her and told her that some guys were trying to bother her and that she had to go to the bathroom.  Defendant told her that she could use the telephone and bathroom at her restaurant.

Kozuch was unable to get in touch with a friend she tried to call.  Kozuch and defendant both spoke to Kozuch's mother on the telephone.  Defendant told Kozuch's mother where Kozuch was. Defendant also called Roger Coleman of the Department of Children and Family Services (DCFS).  Defendant called Coleman because Kozuch said that she would rather die than go back to the Nachusa Home.  Defendant also called the police station but did not remember if that was before or after the police initially contacted her.

Kozuch told defendant that a counselor at the Nachusa Home had rubbed himself on her back side and held her down.  When Kozuch found out that the police were coming, she asked to leave.  Kozuch told defendant that she would commit suicide if she had to go back to Nachusa.  She also held a knife to her throat and told defendant that she would kill herself if defendant opened the door for the police.  Defendant told Kozuch that she would not open the door for the police, that Kozuch should calm down and get some sleep, and that they would take care of everything in the morning.  

Defendant left her keys on the counter, and Kozuch slept on a futon right by the counter.  Defendant slept on another futon in the office.  Kozuch initially told defendant that she did not want to go to sleep because she thought defendant would let the police in.  Defendant said she would not do that but would call her attorney in the morning and, hopefully, a representative of DCFS could come and get Kozuch.

Defendant testified that Kozuch could have left the restaurant at any time that night, but Kozuch never tried to leave.  The keys for the front door were on the counter the whole time.  Further, at one point Kozuch was alone in the kitchen, which had a back door with just a slide arm for a lock.  No key was needed to get out the back door.  Defendant testified that the police repeatedly banged on the door and shined their lights in the windows and that she was torn between letting them in and worrying about Kozuch trying to kill herself.  According to defendant, Kozuch was very irate and upset after talking to her mother.  She threatened suicide and talked about previous suicide attempts. Defendant testified that her intention all along was to turn Kozuch over to DCFS in the morning. Defendant said that all she did that night was to try to help Kozuch because Kozuch's health and safety were at stake and that she was willing to go to jail if that's what it took to keep Kozuch from hurting herself.  On cross-examination, when asked if it was true that she would not let Kozuch go when the police arrived, defendant testified “[a]fter the police were there she didn't want out.  That's when she threatened to commit suicide.”  

On appeal, defendant argues that she was not proved guilty beyond a reasonable doubt of resisting or obstructing a police officer.  Defendant contends that she had no duty to open the door for the police to enter without a warrant and that there were no exigent circumstances that would have justified the police in making a warrantless entry.

When a defendant challenges the sufficiency of the evidence supporting her conviction, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 261 (1985).  The statute under which defendant was convicted provides as follows:

“A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer or correctional institution employee of any authorized act within his official capacity commits a Class A misdemeanor.”  720 ILCS 5/31--1(a) (West 1996).  

The complaint charged that defendant “refused to let officers perform their duties, by locking herself and a juvenile runaway, Andrea Kozuch, 13 yoa DOB: 05-31-83, in her place of business, 1st Street Diner, and preventing police officers to [
sic
] take the juvenile into custody, said offense being a Class A misdemeanor.”

In 
People v. Hilgenberg
, 223 Ill. App. 3d 286, 289 (1991), we held that the section under which defendant was charged requires an act of physical resistance.  We held that both the terms “resistance” and “obstruct” implied a physical act or exertion and that the  complaint must set out what physical act of the defendant constituted resisting or obstructing an officer.  Refraining from  physical action or failing to cooperate with the police is generally not considered the same as resisting or obstructing an officer.  
Hilgenberg
, 223 Ill. App. 3d at 289-90.  

As far as the allegation that defendant locked herself and a juvenile runaway in her place of business, the evidence did not show that defendant did this to resist or obstruct the police.  The record did not show that the police were looking for the runaway and, in response, defendant locked her in the restaurant.  Rather, defendant and Kozuch were already in the restaurant with the doors locked when the police were called to investigate the matter.  The physical act has to be in response to an authorized act of the police.  By locking the door to her business for the evening, defendant was not resisting or obstructing any authorized act of the police.

Because the police did not have a warrant, defendant cannot be held to have obstructed the police by failing to open the door in response to their demands.  In 
Hilgenberg
, we held that a person who passively invokes his or her fourth amendment right to refuse a warrantless entry cannot be charged with resisting or obstructing the police.  
Hilgenberg
, 223 Ill. App. 3d at  290-94.  In 
Steagald v. United States
, 451 U.S. 204, 68 L. Ed. 2d 38, 101 S. Ct. 1642 (1981), the Supreme Court held that the fourth amendment requires the police to have a search warrant to enter the premises of a third party in order to apprehend the subject of a felony arrest warrant.  An arrest warrant is sufficient to allow the police to enter the home of the person named in the warrant if they have probable cause to believe the person is inside (
Payton v. New York
, 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980)), but the police would need a search warrant to enter a third person's property to apprehend that same suspect.  
Steagald
, 451 U.S. at 212 -14, 68 L. Ed. 2d at 45-46, 101 S. Ct. at 1648.  Thus, if the police need a search warrant to enter a third person's property to apprehend a suspected felon for whom they have an arrest warrant, we believe they would also be required to have a search warrant to enter a third person's property to apprehend a juvenile runaway.

We find 
United States v. Prescott
, 581 F.2d 1343 (9th Cir. 1978), instructive.  In 
Prescott
, the defendant was convicted as an accessory after the fact for assisting a suspected felon to hinder or prevent his apprehension.  The court held that the fact that the defendant would not let the police enter her apartment without a warrant to apprehend a person suspected of mail fraud could not be used as evidence against her.  The court explained its reasoning as follows:

“When *** the officer demands entry but presents no warrant, there is a presumption that the officer has no right to enter, because it is only in certain carefully defined circumstances that lack of a warrant is excused. [Citation.] An occupant can act on that presumption and refuse admission.  He need not try to ascertain whether, in a particular case, the absence of a warrant is excused.  He is not required to surrender his Fourth Amendment protection on the say so of the officer.  The Amendment gives him a constitutional right to refuse to consent to entry and search.  His asserting it cannot be a crime, [citation].  Nor can it be evidence of a crime. ***  One cannot be penalized for passively asserting this right, regardless of one's motivation.”  
Prescott
, 581 F.2d at 1350-

51.

Thus, we hold that defendant's refusal to open the door did not constitute resisting or obstructing the police.

The State suggests that the police would have been authorized in making a warrantless entry because there were exigent circumstances, and, consequently, defendant was not justified in refusing to open the door.  We disagree.  The State claims that the exigent circumstance was that the officers needed to take the minor into protective custody.  However, the police knew where the minor was and had no reason to believe she was in danger.  Further, they had officers watching the front and back doors, and defendant had spoken to the police, DCFS, and the child's mother.  According to  the State's position, the police would never need a warrant to enter private property if they have probable cause to believe that a juvenile runaway is on the premises.  The State has cited no authority for such a proposition.  Moreover, it is not a crime to harbor a runaway unless the person does so for 48 hours, and, even then, it is only a crime if the person does so without the knowledge of the minor's parents and without notifying the police.  See 720 ILCS 5/10--6 (West 1996).

The State also suggests that defendant was guilty of resisting or obstructing the police because she refused to turn the minor over to the police.  However, her passive refusal to acquiesce in this request was not a physical act as required by the statute.  If the State wished to charge her with the petty offense of failing to aid the police, it could have done so.  See 720 ILCS 5/31--8 (West 1996).  

The State could have succeeded in showing obstruction if it could have proved beyond a reasonable doubt that Kozuch wanted to go to the police when they arrived and defendant prevented her from doing so.  The State tried to establish this at trial by showing that Kozuch asked to leave even after the police arrived and that defendant would not let her.  Defendant testified that Kozuch did not want to leave after the police arrived and even threatened to kill herself if defendant turned her over.  Kozuch's testimony on this point was equivocal.  Kozuch did testify that she wanted to leave before the police arrived because she did not want to be caught.  She also conceded that she never went to the door or the window to talk to the police and never tried to contact them.  She also testified as follows: “I had been thinking to turn myself in all that night but I couldn't do it.”  Further, Kozuch's own testimony made it apparent that defendant went to sleep in a separate room and left Kozuch where she could have departed through either the front or back doors or could have gone to the window to signal the police.  Kozuch never did so.  Thus, the evidence corroborated defendant's version of the events, and the State clearly did not prove beyond a reasonable doubt that Kozuch wanted to go to the police and that defendant did not allow her.

The judgment of the circuit court of Lee County is reversed.

Reversed.

THOMAS and HUTCHINSON, JJ., concur.