No. 3--06--0274

Filed January 22, 2008

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2008

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois |
| Plaintiff-Appellee, | ) ) | No. 02-CM-1187 |
| v. | ) ) | |
| KARON C. MCCOY, | ) ) | Honorable Edwin Grabiec, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE CARTER delivered the opinion of the court:

After a jury trial, defendant, Karon C. McCoy, was convicted of resisting a peace officer and sentenced to a period of conditional discharge. Defendant appeals her conviction, arguing: (1) that she was not proven guilty beyond a reasonable doubt, and (2) that she was denied a fair trial because of improper comments made by the prosecution in closing argument. We agree with defendant's second contention and, therefore, reverse and remand for new trial.

FACTS

Defendant was charged with simple battery (720 ILCS 5/12-3(a)(2) (West 2006)) and resisting a peace officer (720 ILCS 5/31-1 (West 2006)). The charging instrument alleged that defendant spit in the face (battery) of Officer Eli Limacher and that she physically "resisted the

handcuffing procedure" (resisting). A jury trial was held. At trial, the following evidence was presented.

Bolingbrook police officer Eli Limacher testified that on December 2, 2001, at about 9 p.m., he was working off-duty security at the Walmart store in Bolingbrook. Limacher was wearing a black T-shirt that said "Police" on the front and that had an embroidered badge on the back that said ""Police." Limacher also was wearing a police badge on his belt and had his duty weapon exposed. Limacher saw 14-year-old Quincy McCoy in the store and had been watching him for about 30 minutes. Limacher had prior contact with Quincy for several retail thefts. Quincy was milling around the store, not picking anything up or looking as if he was going to purchase anything. Limacher went over to Quincy and asked him if he was going to buy anything. According to Limacher, Quincy told Limacher in a loud voice to get the "f--- away from [him]." It was Christmastime and the store was very crowded. Limacher asked Quincy if he was in the store with someone else. Quincy pointed to defendant, his mother, and said that he was with her.

Limacher went over to defendant and told her that she needed to remove Quincy from the store because he was causing a disturbance near the registers at the front of the store. Defendant started yelling at Limacher. As she did so, she flopped down onto the floor, started flailing around, and began screaming that Limacher was hitting and beating her. One of the managers of Walmart, Mrs. Laminney, was present in the aisle when this happened. Limacher testified that he was seven to ten feet away from defendant at that time and had not made any physical contact with defendant. Defendant got up and started walking toward the front of the store. She was still yelling that Limacher was hitting her and saying call the police. According to Limacher, defendant was yelling, using the "F" word, and causing a disturbance as she walked. Defendant slowed down by the

2

register. Limacher grabbed her elbow in an effort to keep her moving and to escort her toward the front of the store. Limacher denied that he shoved defendant and testified that he used the same amount of force that he would use to escort his mother by the elbow.

As defendant got up to the registers, she stopped walking and continued to use the "F" word over and over again. Limacher asked defendant to leave the store. Defendant responded by saying, "call the police." Limacher told defendant that he is a Bolingbrook police officer and that he could take her to the security office, where she could contact patrol officers if she had a complaint. Defendant continued to yell and did not move to leave the store or to go to the security office. Because defendant was disturbing customers, Limacher told defendant that she was under arrest. His intention was to arrest her for disorderly conduct. Limacher took defendant's wrist to begin to handcuff defendant. Defendant started struggling. Limacher put one handcuff on defendant, and defendant began to resist Limacher's attempt to put the other handcuff on her. Defendant tensed up the hand that had the handcuff on it and turned her other hand away from Limacher.

Defendant started yelling to Quincy that Limacher was hitting her. Quincy approached very quickly with his hands raised in what Limacher characterized as a fighting stance. Limacher pushed Quincy away.

Limacher was able to get the second handcuff on defendant and began escorting her to the security office. Limacher was escorting defendant from behind while holding onto both of defendant's elbows. Defendant was still resisting but was walking toward the security office. Limacher got defendant to the security office. Defendant was still yelling and being belligerent and was still struggling with Limacher and pulling away from him. Ms. Laminney went to the security office with them. As they went into the room, defendant turned and spit into Limacher's face.

3

Limacher took defendant to the ground and held her face away from both himself and Laminney. Laminney called the police. About three minutes later, additional police officers arrived.

Bolingbrook police officer Jamie Marquez testified that on the date in question, he responded to the Walmart in Bolingbrook. Upon arrival, Marquez was directed to the security office. When Marquez walked into the security office, he saw Limacher on the floor struggling with defendant. Defendant was struggling with Limacher, flailing her arms and legs, and yelling profanities. Limacher was telling defendant to stop struggling and to stop resisting. Defendant kept yelling profanities. Defendant continued to resist and be uncooperative after being removed from the security office. Marquez had to help Limacher get control of defendant. Marquez and Limacher escorted defendant to Marquez's vehicle, as defendant continued to struggle.

Defendant's son, Quincy McCoy, testified that on the date in question, he went to Walmart with defendant. Quincy was playing an arcade game in the store when a police officer walked up to him and started talking to him about his court case.

Quincy went and told defendant. Defendant gave Quincy more money to play the arcade game. Quincy went back and started playing the arcade game. The police officer walked up again with another person and told Quincy that he had to leave. Quincy told the officer that he was with defendant and that they were customers and that he did not have to leave. The officer said something about telling defendant and walked off.

The next thing Quincy knew the police had defendant down and were pulling and dragging defendant. Defendant told Quincy to call the police and tried to hand him her cell phone. The officer would not let defendant hand over her cell phone, so defendant dropped the phone and told Quincy to call the police and to call his father. Quincy called his father and then called the police

4

and tried to explain to them what was happening. The police officer took defendant to a backroom and Quincy lost contact with her.

Quincy testified that at no point during the altercation did he ever see defendant resisting arrest. Quincy denied telling Limacher to get the "f--- away from him" and denied that the store was crowded at the time of the incident. Quincy testified further that he did not see defendant struggle with the officer and that he did not hear her use any profanities with the officer.

Defendant testified that on December 2, 2001, at about 9:40 p.m., she was in Walmart doing some Christmas shopping. Defendant had just picked up her son, Quincy, from the movie theater and decided to stop at Walmart that late because there were not a lot of people in the store. Defendant gave Quincy money to play video games and went about her shopping with her shopping cart. While she was shopping, Quincy came over to her and told her that the Bolingbrook police were at the store and that they wanted him to leave. Defendant told Quincy that they were going to leave and gave him some more money to play video games.

Defendant went over to the candy aisle by the cash registers. As defendant was in the candy aisle, Limacher approached her and asked if she was Quincy's mother. Defendant did not look to see who it was and responded affirmatively. Limacher told her that he wanted Quincy to leave the store. Defendant asked Limacher if Quincy was doing anything wrong. Limacher responded that Quincy was not doing anything wrong, but that he still wanted Quincy to leave the store. As the conversation ensued, defendant told Limacher that it seemed that he was harassing Quincy.

Limacher told defendant that he wanted her to leave the store. That's when defendant turned and looked at Limacher face to face. Defendant did not remember if Limacher was in uniform but testified that she did not think so and that she did not think that he looked like a police officer.

5

Defendant told Limacher that she and Quincy were not doing anything wrong and that he was harassing them. Defendant reached in her purse to get a pencil and told Limacher that she wanted his name so that she could contact his superiors.

Limacher pushed defendant's cart into her, and defendant fell to the floor. Defendant told Limacher that she could not believe he did that, that she was going to contact his superiors in the morning, and that she was calling the police right now.

Defendant started to walk toward the front of the store. She called 911 on her cell phone and told them that there was a person in Walmart harassing her. Limacher grabbed her hand and put it in handcuffs and told her that she was under arrest. Defendant asked Limacher what she was under arrest for, and he just started pushing her toward the front of the store. When they got by the front of the store, defendant yelled for Quincy to come and get her cell phone and to call his father and the police. Limacher grabbed defendant's other hand and cuffed it. Defendant dropped the cell phone and kicked it toward Quincy. Limacher threw the hood of defendant's coat over her head and escorted her to the security office.

When they got to the security office, the door was closed. According to defendant, Limacher hit defendant's head against the door, reached around, swung the door open, and pushed defendant inside. Limacher had his hand on the back of defendant's head and was throwing her around the room. Defendant was defenseless. Her hands were handcuffed behind her and she had her hood over her head. Limacher was kicking and choking defendant and throwing her around the room. Defendant was yelling for someone to call the police and saying that she was being beaten up.

Defendant testified that she did not spit on Limacher and that she was not able to face Limacher during the incident. Defendant testified further that she was not angry throughout the

6

incident, just shocked, that she was not yelling or screaming in the middle of the store, and that she never swore at Limacher. Defendant stated that she never struggled with Limacher and that she never tried to get away from him. According to defendant, Limacher punched and kicked her and sat on her to subdue her. Defendant was in fear for her life and thought she was going to die.

After the evidence had been presented, the parties proceeded to closing argument. In their closing arguments, the prosecution referenced the entire series of events and argued that defendant's conduct constituted resisting a peace officer. During the summation portion of closing argument, the prosecutor made the following comments to the jury:

> "Now, when an officer asks somebody to comply, even if you believe that that order is not proper, even if you believe it is in error, you have to comply for your safety and for the officer's. If there's a mistake or something like that, you look at that later.

> But at the time the officer is asking you to comply with an order, you comply. You do not resist and you do not flail about. You do not cause a problem. It's, Yes, sir, Officer. You obey. Defendant didn't do that here.

> * * *

> You must comply with an officer's directives. It is for your safety and for the officers that you must comply. This isn't a time to debate the lawfulness of the arrest. This isn't the time to debate, did I do anything wrong. He said put your hands behind your back, you comply. Follow his orders and do as he says for your safety and his.

7

You do not have a right to question him."

During the rebuttal portion of closing argument, the prosecutor made the following comments to the jury:

"Now, let's just talk a minute for a moment about what she told you. And let me just tell you -- let's assume for a moment that exactly what she said is true, about being on the cell phone. He just came from her, walked up behind her, you know, grabbed her arm, you know, put her under arrest, and she was on the phone the whole time talking to the police.

Just take that as true. In no way is it true. Take that as the truth. That is resisting. That is resisting arrest. The moment she does not comply, the instant she does not drop that phone, put her arms and say -- walk away out of the store voluntarily, that's resisting. That's resisting arrest. That's the law. That's the law in the State of Illinois. The Judge will read it to you; I'll read it to you briefly.

\*\*\*

There's only three issues: Did he tell her she was under arrest? Yes, he did. She admitted it. Did she hear it? Yes, she admitted that, too. And did she not comply instantly when he told her to do that? All three of those things happened by the fact that she stayed on the phone, according to her. 'I stayed on the phone and was talking to

someone else and I was surprised and he handcuffed me.'

Even if you believe that, her story, and watching her testify today, even if you believe everything she said was true, that's still resisting, by law, by the State of Illinois, by the rules that the Judge will read to you later."

After closing arguments had been concluded, the trial judge instructed the jury on the law. Among the instructions provided to the jury were Illinois Pattern Jury Instructions, Criminal, Nos. 22.13 and 22.14 (4th ed. 2000) (hereinafter IPI Criminal 4th Nos. 22.13 and 22.14). IPI Criminal 4th No. 22.13, as read in this case, instructed the jury that "[a] person commits the offense of resisting a peace officer when he knowingly resists the performance of any authorized act within the official capacity of one known to him to be a peace officer." IPI Criminal 4th No. 22.14, as read in this case, instructed the jury as follows:

"To sustain the charge of resisting a peace officer, the State must prove the five[1] propositions: First, that Eli Limacher was a peace officer; Second, that the defendant knew Eli Limacher was a peace officer; And, third, that the defendant knowingly resisted the performance of Eli Limacher of an authorized act within his official capacity.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable

---

[1]It appears from the record that the trial judge misspoke and stated "five" instead of "the following."

9

doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

After deliberating, the jury found defendant guilty of resisting a peace officer and not guilty of battery. Defendant filed a motion for judgment notwithstanding the verdict and for a new trial and asserted that the finding of guilty should be set aside because the evidence showed that at the time of the incident, Officer Limacher was not working as a peace officer but, rather, as a paid security officer for Walmart. The motion was denied and defendant was subsequently sentenced to a period of conditional discharge. This appeal followed.

ANALYSIS

Defendant argues first that she was not proven guilty beyond a reasonable doubt of resisting a peace officer. Specifically, defendant asserts that the People failed to prove that she committed a physical act of resistance. The People argue that the evidence was sufficient to prove defendant guilty.

Initially, we must determine the appropriate standard of review. Defendant frames this issue as a question of law. Defendant argues that even if the arresting officer's testimony is taken as true and it is assumed that defendant pulled her arm away from the officer during handcuffing, that conduct as a matter of law is not sufficient to constitute a physical act of resistance as required by statute and defined by case law. Defendant contends that since she is not challenging any findings of fact or any determinations of credibility, the appropriate standard of review for this issue is <u>de</u>

10

novo. See People v. Smith, 191 Ill. 2d 408, 411, 732 N.E.2d 513, 514 (2000) (where facts are not in dispute, defendant's guilt is a question of law subject to de novo review).

The issue in this case, however, cannot be so narrowly defined. At trial, the jury was presented with a series of events leading up to the arrest of defendant and the removal of defendant from the Walmart store. The People presented their version of what had transpired and argued that defendant's conduct during the entire series of events constituted a physical act of resistance. Defendant presented a different version of what had transpired--one that was completely contrary to the People's version on almost every key fact--and argued that defendant's conduct during the entire series of events did not constitute a physical act of resistance. Under those circumstances, a challenge as to the sufficiency of the evidence is not a question a law. The appropriate standard of review, therefore, is that set forth in People v. Collins, 106 Ill. 2d 237, 478 N.E.2d 267 (1985). In reaching that conclusion, we note that there are situations where parties may stipulate to a very narrow set of facts so as to give rise to a question of law for the trial court and the appellate court to review. The parties did not proceed in that manner in the present case.

Pursuant to the Collins standard, a reviewing court faced with a challenge to the sufficiency of the evidence must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. People v. Collins, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985). The reviewing court will not retry the defendant. People v. Jimerson, 127 Ill. 2d 12, 43, 535 N.E.2d 889, 903 (1989). Determinations of witness credibility, the weight to be given testimony, and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact, not the reviewing court. See Jimerson, 127 Ill. 2d at 43, 535 N.E.2d at 903. A reversal is warranted only

11

if the evidence is so improbable or unsatisfactory that it leaves a reasonable doubt regarding the defendant's guilt. People v. Flowers, 306 Ill. App. 3d 259, 266, 714 N.E.2d 577, 582 (1999).

Section 31-1 of the Criminal Code of 1961 provides that "[a] person who knowingly resists or obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a) (West 2006). The statute does not prohibit a person from verbally resisting or arguing with a police officer about the validity of an arrest or other police action. People v. Raby, 40 Ill. 2d 392, 399, 240 N.E.2d 595, 599 (1968). Verbal resistance or argument alone, even the use of abusive language, is not a violation of the statute. People v. Long, 316 Ill. App. 3d 919, 927, 738 N.E.2d 216, 222 (2000). Rather, the statute prohibits a person from a committing a physical act of resistance or obstruction--a physical act that impedes, hinders, interrupts, prevents or delays the performance of the officer's duties, such as going limp, forcefully resisting arrest, or physically helping another party to avoid arrest. Raby, 40 Ill. 2d at 399, 240 N.E.2d at 599. The acts of struggling or wrestling with a police officer are physical acts of resistance that will support a conviction for resisting a peace officer, even if the underlying attempted arrest is unwarranted. People v. Miller, 199 Ill. App. 3d 603, 611, 557 N.E.2d 500, 505 (1990). Ultimately, it is for the trier of fact to determine if a defendant physically resisted or obstructed a police officer. See People v. Gill, 355 Ill. App. 3d 805, 810, 825 N.E.2d 339, 343 (2005).

In the present case, Officer Limacher testified that defendant struggled against his efforts to escort her out of the store, that she tensed up and pulled her hand away from him during handcuffing, that she struggled against his efforts to escort her to the security office, and that she struggled and flailed about once inside the security office. Limacher's testimony was somewhat corroborated by

12

that of Officer Marquez, who testified that when he arrived, Limacher was on the floor in the security office trying to gain control over a struggling defendant. The testimony of the two officers, when viewed in the light most favorable to the prosecution, was sufficient to prove defendant guilty beyond a reasonable doubt of resisting a peace officer. See Miller, 199 Ill. App. 3d at 610-12, 557 N.E.2d at 505-06 (evidence that defendant pushed, struggled, and wrestled with police officer was sufficient to support conviction for resisting a peace officer); People v. Synnott, 349 Ill. App. 3d 223, 225-29, 811 N.E.2d 236, 238-41 (2004) (evidence that defendant repeatedly disobeyed police officer's order to exit vehicle was sufficient to support conviction for obstructing a peace officer); People v. Diaz, 123 Ill. App. 3d 239, 244, 462 N.E.2d 770, 773 (1984) (evidence that officers were in uniform and that there was a physical struggle between defendant and officers was sufficient to support conviction for resisting arrest); People v. Crawford, 152 Ill. App. 3d 992, 993-95, 505 N.E.2d 394, 395-96 (1987) (evidence that defendant pulled away from police officers after arrest, struggled, and caused officers to use physical force to take him into custody was sufficient to support conviction for resisting a peace officer); People v. Brown, 150 Ill. App. 3d 535, 541-42, 501 N.E.2d 1347, 1352 (1986) (evidence that defendant during handcuffing held his arms stiff, struggled to release himself from the officer's grip, and did everything he could to keep from having his arm placed behind his back was sufficient to support conviction for resisting a peace officer); Gill, 355 Ill. App. 3d at 809-10, 825 N.E.2d at 343 (evidence that defendant struggled with police after arrest was sufficient to support conviction for resisting a peace officer). Although defendant presented a different version of events, it was for the trier of fact to determine which version of events to believe. See Jimerson, 127 Ill. 2d at 43, 535 N.E. 2d at 903. The fact that the jury acquitted defendant of the battery charge is not a clear indication that the jury rejected the officer's testimony. See Diaz, 123

Ill. App. 3d at 244, 462 N.E.2d at 773. The acquittal may have been nothing more than an exercise of leniency by the jury. See Diaz, 123 Ill. App. 3d at 244, 462 N.E.2d at 773.

Having reached that conclusion, we must comment upon People v. Flannigan, 131 Ill. App. 2d 1059, 267 N.E.2d 739 (1971), a case which is heavily relied upon by defendant. In Flannigan, the evidence viewed in the light most favorable to the prosecution established that defendant, after being informed he was under arrest for reckless driving, did not comply with the police officer's repeated request to get out of the car, had to be physically removed from the vehicle, and jerked his arm away from the officer while being escorted to the police vehicle. Flannigan, 131 Ill. App. 2d at 1060, 267 N.E.2d at 740. Defendant's own father testified that when he arrived at the scene, he saw the officer pull defendant from the car and that defendant and the officer were kind of wrestling around. Flannigan, 131 Ill. App. 2d at 1062, 267 N.E.2d at 741. We believe that under the appropriate standard of review, the facts in Flannigan were sufficient to establish beyond a reasonable doubt that defendant committed a physical act of resistance and to support a conviction for resisting a peace officer. We disagree with the Flannigan court's conclusion to the contrary. To follow such a ruling would be to encourage those who disagree with the actions of a police officer to physically resist those actions. See Synnott, 349 Ill. App. 3d at 228, 811 N.E.2d at 240 ("it cannot be good policy to remove the only stick that the police have, other than the billy club itself, to persuade such recalcitrant individuals"). The appropriate question appears to be whether defendant's conduct--active, passive, or inactive--impeded the officer's attempt to execute an arrest. See Synnott, 349 Ill. App.3d at 227-28, 811 N.E.2d at 240-41. Obviously, the requisite resistance or obstruction must be accomplished knowingly. 720 ILCS 5/31-1(a) (West 2006).

As her second point of contention on appeal, defendant argues that she was denied a fair trial

because of improper comments made by the prosecution in closing argument. Defendant acknowledges that this issue has not been properly preserved for appellate review but argues that we should reach the merits of it, nonetheless, as a matter of plain error. The People argue that no error occurred, that any improper comment by the prosecution was corrected by the jury instructions, and that plain error review does not apply.

The question of whether comments made by the prosecution in closing argument are so egregious as to warrant a new trial is a question of law that is reviewed de novo. People v. Wheeler, 226 Ill. 2d 92, 121, 871 N.E.2d 728, 744 (2007). Prosecutors are given wide latitude in making closing arguments. Wheeler, 226 Ill. 2d at 123, 871 N.E.2d 745. In reviewing comments made by the prosecution in closing argument, the reviewing court asks whether or not the comments engender substantial prejudice against a defendant such that it is impossible to say whether a verdict of guilt resulted from the comments. Wheeler, 226 Ill. 2d at 123, 871 N.E.2d at 745. Improper comments made in closing argument are substantial and warrant reversal and a new trial if the improper comments are a material factor in a defendant's conviction. Wheeler, 226 Ill. 2d at 123, 871 N.E.2d at 745. The question is whether the jury could have reached a contrary verdict had the improper comments not been made. People v. Linscott, 142 Ill. 2d 22, 28, 566 N.E.2d 1355, 1358 (1991). If a reviewing court cannot find that the improper comments did not contribute to the defendant's conviction, a new trial should be granted. Linscott, 142 Ill. 2d at 28, 566 N.E.2d at 1358.

In support of her argument, defendant first asserts that the prosecution's comments in closing argument regarding acts of alleged resistance by defendant, other than the pulling away during handcuffing that was alleged in the charging instrument, improperly broadened the charge against

15

defendant. As noted in the discussion of the standard of review in the previous issue, this case cannot be so narrowly defined. Defendant was charged with resisting and was tried on the whole series of events and set of circumstances, not limited to pulling her arm away. The jury was given the general resisting arrest instruction and found defendant guilty. We therefore reject defendant's argument on this point.

Defendant also asserts that several of the prosecution's comments misstated the law as to the acts required to support a charge of resisting arrest because the comments suggested to the jury that mere argument or refusal to cooperate with a police officer is sufficient to support a finding of guilty. We agree with defendant on this point.

In the summation portion of closing argument, the prosecution informed the jury that a person does not have a right to argue with a police officer and implied to the jury that mere argument is sufficient for a finding of guilty. This is a clear misstatement of the law. Argument alone is not sufficient to support a conviction for resisting a peace officer. Raby, 40 Ill. 2d at 399, 240 N.E.2d at 599. Further comment by the prosecution in the rebuttal portion of closing argument made the problem worse. The prosecutor told the jury that even if defendant was to be believed, her conduct constituted resisting when she remained on her cell phone and did not immediately comply with the officer's commands. Again, this is misstatement of the law. Although such conduct may rise to the level of resisting if a person persists in refusing to comply (see Synnott, 349 Ill. App. 3d at 225-29, 811 N.E.2d at 238-41 (evidence that defendant repeatedly disobeyed police officer's order to exit vehicle was sufficient to support conviction for obstructing a peace officer)), there is nothing in the law to suggest that a person may not at least initially question the validity of the officer's actions (see Crawford, 152 Ill. App. 3d at 995, 505 N.E.2d at 396 (a person may inquire as to the reason for the

16

arrest, may point out the officer's mistake, and may protest and argue the officer's actions)). Contrary to the People's assertion on appeal, these misstatements of law were not corrected by the jury instructions. The pattern instructions for resisting a peace officer do not define the word "resisted." See IPI Criminal 4th Nos. 22.13, 22.14. We therefore find that error occurred.

The question then becomes whether that error is plain error. "Under the plain error rule, issues not properly preserved may be considered by a reviewing court under two limited circumstances: (1) where the evidence is closely balanced, so as to preclude argument that an innocent person was wrongfully convicted; or (2) where the alleged error is so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process." 134 Ill. 2d R. 615(a); People v. Hall, 194 Ill. 2d 305, 335, 743 N.E. 2d 521, 539 (2000). In the first instance, which is what is alleged in this case, the defendant must prove prejudice. People v. Herron, 215 Ill. 2d 167, 187, 830 N.E.2d 467, 479 (2005). To satisfy that burden, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. Herron, 215 Ill. 2d at 187, 830 N.E. 2d at 479. The burden of persuasion remains with the defendant. Herron, 215 Ill. 2d at 187, 830 N.E. 2d at 480.

The instant defendant has met that burden in the present case. At trial, Officer Limacher testified to one version of events, which would have supported a finding of guilty. Defendant testified to a contrary version of events, which would have supported a finding of not guilty. The other witnesses that testified did not see a large portion of the events in question. There was no physical evidence presented to corroborate either version of events and no testimony was presented from a neutral witness. Under these limited circumstances, we find that the evidence here was

17

closely balanced. Furthermore, because the prosecution misstated the law in a manner that would have allowed for the jury to find defendant guilty even if she was not guilty under the law and because the pattern jury instructions did not correct that error, we must reverse defendant's conviction and remand this case for new trial. The jury may have reached a contrary verdict had the improper remarks not been made. See Linscott, 142 Ill. 2d at 28, 566 N.E.2d at 1358; Wheeler, 226 Ill. 2d at 123, 871 N.E.2d at 745. Under these circumstances, we cannot find that the prosecution's improper remarks did not contribute to the defendant's conviction. See Linscott, 142 Ill. 2d at 28, 566 N.E.2d at 1358; Wheeler, 226 Ill. 2d at 123, 871 N.E.2d at 745.

In reaching that conclusion, we note that although we cite People v. Wheeler for a statement of the law regarding prosecution comment in closing argument, we do not suggest that the prosecution's conduct in this case was the type of egregious behavior that our supreme court harshly condemned in Wheeler. There is great disagreement in the law as to what acts constitute a physical act of resistance sufficient to support a conviction for resisting a peace officer. Some courts have found that passive acts of resistance (failure or refusal to comply a police order) are not a violation of the statute. See People v. Cope, 299 Ill. App. 3d 184, 189-92, 701 N.E.2d 165, 169-71 (1998) (evidence that defendant failed to comply with police officer's order that defendant open the door so that officer could take custody of juvenile runaway was not sufficient to support conviction for resisting or obstructing a peace officer). Other cases have made a distinction between passive conduct and inaction. See People v. Hilgenberg, 223 Ill. App. 3d 286, 290, 585 N.E.2d 180, 184 (1991) (defendants' inaction in refusing to open door to building to permit entry of sheriff was not an act of physical resistance and would not support a charge of obstructing a peace officer); People v. Stoudt, 198 Ill. App. 3d 124, 127-28, 555 N.E.2d 825, 827-28 (1990) (defendants' refusal to

18

remove themselves from highway at officer's request was not a physical act of resistance and would not support a charge of resisting a peace officer). Later, that same district of the appellate court indicated that the distinction between acting and refraining from acting is not dispositive in this area. See Synnott, 349 Ill. App. 3d at 227, 811 N.E.2d at 240. Other courts, thus, have found that a repeated failure or refusal to comply may support a violation of the statute. See Synnott, 349 Ill. App. 3d at 225-29, 811 N.E.2d at 238-41 (evidence that defendant repeatedly disobeyed police officer's order to exit vehicle was sufficient to support conviction for obstructing a peace officer). Although most courts agree that active physical resistance (wrestling or struggling with a police officer) is a violation of the statute, some courts have seemed to have made a distinction based upon the amount of active physical resistance asserted by the defendant and have found that where the defendant initially resists but then eventually complies with police orders, the statute has not been violated. See Flannigan, 131 Ill. App. 2d at 1062-63, 267 N.E.2d 742 (evidence that defendant did not comply with officer's repeated requests to get out of the car, that he pulled his arm away from the officer, and that he was kind of wrestling with the officer were not sufficient to support conviction for resisting a peace officer where defendant eventually complied with the officer's request to get out of his car, made no effort run away, and went to the police station in his father's car). Until our supreme court resolves these issues, the disagreement will continue among the appellate courts in cases such as this.

For the foregoing reasons, we reverse defendant's conviction for resisting a peace officer and remand this case for new trial.

Reversed and remanded.

JUSTICE HOLDRIDGE, specially concurring:

19

I concur in the outcome of this court's opinion but disagree with its observation that People v. Flannigan, 131 Ill. App. 2d 1059 (1971), was wrongly decided. In Flannigan, the court described the defendant's conduct as follows: "Essentially, the evidence shows that defendant did not immediately step from his car, that he wanted to give his car keys to his girl friend, that he intended to argue with Sergeant Pendell over the charge and that he jerked his arm away from Pendell when Pendell tried to take him to the car." Flannigan, 131 Ill. App. 2d at 1063. In the instant case, by contrast, the opinion reads:

"[O]fficer Limacher testified that defendant struggled against his efforts to escort her out of the store, that she tensed up and pulled her hand away from him during handcuffing, that she struggled against his efforts to escort her to the security office, and that she struggled and flailed about once inside the security office. Limacher's testimony was somewhat corroborated by that of officer Marquez who testified that when he arrived, Limacher was on the floor in the security office trying to gain control over a struggling defendant."

The defendant in Flannigan never tried to break away; instead he told the officer: "Take your hands off. I'll go." Flannigan, 131 Ill. App. 2d at 1062. I believe the case was properly decided even in light of the current reasonable doubt standard.

PRESIDING JUSTICE McDADE, concurring in part, dissenting in part:

The majority has reversed the conviction of Karon McCoy and remanded the matter for a new trial, finding her original trial unfair because of improper comments made by the prosecution in closing argument. While I concur in the majority's finding that the prosecutor's comments were improper and deprived Ms. McCoy of her fundamental right to a fair trial, I dissent from the

20

majority's finding that the evidence presented at trial was sufficient to prove Ms. McCoy guilty beyond a reasonable doubt of resisting a peace officer. Accordingly, I would reverse and vacate her conviction.

In its written decision, the majority discusses extensively what can appropriately be characterized as the "unsettled" nature of the case law on resisting arrest. I agree that the cases are all over the board on what constitutes such resisting: Is talking enough? Does passive uncooperation suffice or is some active force or exertion required? The answers depend not only on the appellate district but, occasionally, on the specific panel or some compassionate tug generated by the defendant's circumstances. This situation necessarily results in uneven justice. I echo the majority's belief that clarification from the supreme court is needed in this area of the law.

In the instant cases, I believe that (1) consideration of the specific facts asserted to be resistance should be limited to the State's framing of the alleged criminal conduct in its complaint, and (2) the appropriate standard of review should be determined solely on the basis of those facts. Defendant was advised by the charging instrument that it was her conduct during the handcuffing procedure that constituted the resistance. She was not advised by that instrument that any other conduct would be relevant and was thus deprived of any opportunity to seek out occurrence witnesses other than her son to refute the State's evidence and corroborate her own version of events. For these reasons, I would agree with defendant that our consideration should be restricted to her conduct in "physically resist[ing] the handcuffing procedure" of Officer Limacher.

With regard to that particular conduct, there is no factual dispute -- Officer Limacher and Ms. McCoy agree that, as the officer testified, "she tensed the hand up that I applied the handcuff to and turned her left away from me." After this initial reaction, Officer Limacher was able to apply the

21

second handcuff to defendant's left hand. Any earlier conduct was not in response to any attempt (or threat) to put her under arrest and seems to me to be irrelevant. Her other alleged conduct was after she had been secured in the handcuffs. It was not part of the charged conduct and the State made no motion to enlarge the charge or to conform the pleadings to the proof. For these reasons, I believe the conduct we can consider is limited and the facts related to that conduct are undisputed. Consequently, the standard of review is *de novo*.

Analysis

Section 31-1(a) of the Criminal Code of 1961 provides that "[a] person who knowingly resists or obstructs the performance by one known to the person to be a peace officer * * * of any authorized act within his official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a) (West 2000). Our supreme court, in *People v. Raby*, 40 Ill. 2d 392, 240 N.E.2d 595 (1968), observed that:

> "'Resisting' or 'resistance' means 'withstanding the force or effect of'
> or the 'exertion of oneself to counteract or defeat.' 'Obstruct' means
> 'to be or come in the way of.' These terms are alike in that they
> imply some physical act or exertion. Given a reasonable and natural
> construction, these terms do not proscribe mere argument with a
> policeman about the validity of an arrest or other police action, but
> proscribe only some physical act which imposes an obstacle which
> may impede, hinder, interrupt, prevent or delay the performance of
> the officer's duties, such as going limp, forcefully resisting arrest or
> physically aiding a third party to avoid arrest. [Citation.]" *People v.*

22

*Raby*, 40 Ill. 2d at 399, 240 N.E.2d at 599.

This court in *City of Pekin v. Ross*, 81 Ill. App. 3d 127, 400 N.E.2d 992 (1980), examined the question of whether an individual's action of pulling his arms down and in front of him while being handcuffed was sufficient to support a conviction for resisting a peace officer. The defendant in *Ross* testified that he took this action because the officers were hurting him by putting his hands behind his back and pushing them up. We found this action alone insufficient to sustain defendant's conviction. *Ross*, 81 Ill. App. 3d at 130, 400 N.E.2d at 994. Although we did specifically note that the officers were hurting the defendant, and that the officers' testimony was inconsistent, we also found that "the only struggling the defendant did was to pull his arms down, which was certainly not enough to constitute resistance." *Ross*, 81 Ill. App. 3d at 130, 400 N.E.2d at 994. We cited *People v. Flannigan*, 131 Ill. App. 2d 1059, 267 N.E.2d 739 (1971), in support of our holding.

In *Flannigan*, the evidence showed that the defendant did not immediately step from his car, that he wanted to give his car keys to his girlfriend, that he intended to argue with police over the charge and used abusive language, and like here, that he jerked his arm away when the officer tried to take custody of him. At no time did he say that he refused to go nor did he attempt to escape. In reversing the defendant's conviction for resisting arrest, the court stated:

> "[s]uch conduct, while not the paragon of cooperation, was not
> 'withstanding the force or effect of' or the 'exertion of oneself to
> counteract or defeat' [the officer] in the exercise of his authorized
> duty; so that, giving the statute a reasonable and natural construction
> as has been done by our Supreme Court, * * * defendant's conduct,
> which is at most an insubstantial display of antagonism or

23

belligerence, [does not] constitute the offense of resisting a police officer." *Flannigan*, 131 Ill. App. 2d at 1063, 267 N.E.2d at 742.

Here, as in *Flannigan*, Limacher did not testify that defendant attempted to flee on foot or that defendant stated an intention not to be arrested. In fact, defendant repeatedly begged for someone to call the police. The only evidence presented as to defendant's alleged resistence was Limacher's testimony that defendant "tensed the hand up that [he] applied the handcuff to and she turned her left away from me." As this court found in *Ross*, this behavior alone is insufficient to constitute resistance. See *Ross*, 81 Ill. App. 3d at 130, 400 N.E.2d at 994. Again, defendant testified that Limacher approached her from behind and suddenly placed a handcuff on her right hand while her left hand was being used to call the police from her cell phone. Significantly, it was merely a matter of seconds from the time defendant's right hand was handcuffed to the time her left hand was also handcuffed. While section 31-1 does require an individual to comply with a peace officer's authorized actions, it does not call for complete and immediate submission. See *Ross*, 81 Ill. App. 3d at 130, 400 N.E.2d at 994; *Flannigan*, 131 Ill. App. 2d at 1063, 267 N.E.2d at 742. A contrary interpretation is inconsistent with at least some Illinois case law and does not constitute a reasonable and natural construction of section 31-1. Thus, I would find that defendant's act, in reaction to being handcuffed and in attempting to complete her 911 call, of momentarily turning her arm away as Limacher pulled her opposite arm backward did not, without more, rise to the level of resisting a peace officer. Such behavior simply does not fall within the purview of "withstanding the force or effect of" or the "exertion of oneself to counteract or defeat" an officer's exercise of his authorized duty.

In coming to this conclusion I would reject the State's reliance upon the Second District's

24

holding in *People v. Synnott*, 349 Ill. App. 3d 223, 811 N.E.2d 236 (2004). The *Synnott* court, in rejecting the Fifth District's reasoning in *Flannigan*, held that a physical act is not necessary for obstructing a peace officer where a defendant repeatedly refused to get out of his car because "any behavior that actually threatens an officer's safety or even places an officer in fear for his or her safety is a significant impediment to the officer's performance of his or her duties." *Synnott*, 349 Ill. App. 3d at 228-29, 811 N.E.2d at 241. Here, Limacher did not testify that he was in fear for his safety, nor did defendant threaten him. Moreover, this court has already held that the act of momentarily pulling one's arm while being handcuffed is not enough to constitute resistance. See *Ross*, 81 Ill. App. 3d at 130, 400 N.E.2d at 994. Consequently, I believe *Synnott* is not only overly broad, but is inapplicable to the present case.

Finally, it would be unfair not to provide some context here by pointing out that this entire encounter was precipitated by the officer for no apparent good reason. Limacher himself admitted that he did not see Quincy McCoy pick anything up or place anything in his pockets; he saw no wrong doing. Nonetheless, Limacher decided to confront Quincy due to the boy's past contact with the law. Limacher then proceeded to confront defendant, telling her she needed to remove Quincy (and herself) from the store. It was defendant's contention that Limacher also admitted to her that he had no reason to remove Quincy from the store. When she inquired as to why Limacher was harassing her and her son, Limacher allegedly pushed a shopping cart into her, knocking her to the floor. Limacher admits defendant fell to the floor, but he claims her "flop to the floor" was of her own accord. Defendant then yelled for someone to call the police. While conflicting testimony was offered as to whether these cries contained vulgar language, it does appear that it was the cries that were the basis for defendant's sudden arrest. These facts raise several troubling questions as to the

25

validity of defendant's arrest.

Still, it is clear that the law in Illinois is that one may not resist an arrest no matter how unfounded it might be. Without reference to the legitimacy of the basis of the arrest (or lack thereof), it is my belief that, given the allegations of the charging instrument, the State's evidence of guilt relative to those allegations was insufficient to sustain defendant's conviction for resisting arrest. For these reasons, I believe her conviction should be reversed and vacated.